# STATE OF MARYLAND *v.* HARLEY ROBERT HICKS

[No. 130, September Term, 1978.]

*Decided June 25, 1979.*

*Motion for reconsideration filed by appellant on July 13, 1979; motion ne recipiatur and motion for reconsideration filed by appellee on July 17, 1979; motions denied July 19, 1979. See per curiam filed July 19, 1979, at page 334 infra.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*F. Ford Loker, Assistant Attorney General,* with whom

were *Francis B. Burch, Attorney General, Richard D. Warren, State's Attorney for Wicomico County,* and *H. Michael Hickson, Assistant State's Attorney for Wicomico County,* on the brief, for appellant.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. DIGGES, COLE and DAVIDSON, JJ., dissent and DAVIDSON, J., filed a dissenting opinion in which DIGGES and COLE, JJ., join at page 321 *infra.* See per curiam filed July 19, 1979, in denying motion for reconsideration at page 334 *infra.*

This appeal draws into question the proper application of Maryland Rule 746 which governs the scheduling of criminal cases for trial. The rule provides:

> "a. *General Provision.*
>
> Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel).
>
> "b. *Change of Trial Date.*
>
> Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

(1)

The Circuit Court for Wicomico County (Pollitt, J., administrative judge), deeming the provisions of Rule 746 to be mandatory, dismissed an eight-count criminal information

filed against the appellee Hicks because it concluded that the case was not brought to trial within the 120-day period prescribed by the rule, and no motion was made setting forth "extraordinary cause" to justify a trial continuance. The State appealed, claiming that a trial date had been set within the 120-day period and a continuance had been granted in open court for the extraordinary reason that Hicks, being incarcerated in a Delaware prison, did not appear for trial on the scheduled date. The State also claimed that the provisions of Rule 746 are directory only, rather than mandatory, and that in any event Hicks suffered no prejudice as a result of the extension of a trial date beyond the 120-day period. We granted certiorari prior to consideration of the appeal by the Court of Special Appeals to determine the important issues raised in the case.

The record reveals that Hicks was serving a sentence in a Delaware prison when, on January 20, 1978, he invoked the provisions of the Interstate Agreement On Detainers, to which Maryland is a party state, to obtain a trial upon criminal charges then pending against him in Wicomico County.[1] As a result, Hicks was returned to the Wicomico County Jail, tried on April 4, 1978 on the Maryland charges, and subsequently sentenced to three years' imprisonment to run consecutive to his Delaware sentence. On April 21, 1978, while Hicks was still incarcerated in the Wicomico County Jail awaiting return to Delaware, the eight-count criminal information here involved was filed.[2] On April 24, 1978, the public defender entered his appearance for Hicks, and a trial date of April 27 was fixed by agreement of counsel. Unknown to either the prosecutor or the public defender, the sheriff returned Hicks to Delaware on April 26. The State thereafter

---

[1]. Maryland adopted the Interstate Agreement by ch. 627 of the Acts of 1965, now codified as Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 616A, *et seq.* Pursuant to its provisions, either a prisoner incarcerated in a penal facility of another state, or the state in which untried criminal charges are pending against the prisoner may request his temporary transfer for trial on the untried charges. When the prisoner invokes the provisions of the Interstate Agreement, it is required that he be brought to trial within 180 days. Section 616D. When the State is the moving party, trial is to commence within 120 days of the arrival of the prisoner in the receiving state. Section 616E.

[2]. It charged Hicks with storehouse breaking and related offenses.

lodged a detainer with the Delaware authorities in connection with the outstanding criminal information filed on April 21, 1978. The criminal assignment office of the Circuit Court for Wicomico County scheduled trial on these charges for August 8, 1978, a date within the 120-day period prescribed by Rule 746.

When the case was called for trial before Judge Pollitt on August 8, 1978, the prosecutor advised the court that "arrangements" had been made to have Hicks in court, but that he was under sentence in a Delaware prison and had not "consented to come." The court responded: "Obviously we can't proceed without him." The prosecutor informed the court that Hicks would finish serving his Delaware sentence in September at which time he would be returned to Maryland to begin serving the three-year sentence imposed upon him on April 4, 1978. The prosecutor told the court that "we will have an opportunity to get custody of him sometime beginning in September." The court ordered the case continued, remarking once again: "Obviously we can't do anything with the man [Hicks] not being here."

On August 25, Hicks filed a motion to dismiss the criminal information on the ground that he had not been tried within the 120-day period prescribed by Rule 746. He contended that the State could have secured his attendance at trial on August 8 by invoking the Interstate Agreement On Detainers or by initiating extradition proceedings but had failed to do either. Hicks argued that the prosecutor made no motion at the August 8 hearing, either in writing or in open court, establishing the existence of "extraordinary cause" justifying a continuance beyond the 120-day period, as required by Rule 746.

A hearing on the motion was held before Judge Pollitt on October 2, 1978. The prosecutor argued that the requisite "extraordinary cause" under Rule 746 was shown at the August 8 hearing to justify the continuance in that the Delaware authorities refused to release Hicks for trial on August 8 unless the State invoked the provisions of the Interstate Agreement On Detainers. The prosecutor did not

invoke the Agreement, he said, because "we are not obligated to do so." He explained:

> "Our normal office procedure is not to do that unless there are very extraordinary circumstances, because usually there are costs involved and our budget does not provide for these extraordinary circumstances."

The court said that it was concerned with whether Rule 746 was mandatory, and not with who was at fault in not having Hicks present for trial on August 8. Not having the benefit of a transcript of the August 8 hearing, the court remarked:

> "I do not know what took place on August the 8th. I don't know if there was a motion made at that time to change the trial date. The docket entry shows that he [Hicks] failed to appear because he was in the Delaware Correctional Center, and the case was continued."

The court concluded that Rule 746 was mandatory and as a consequence the State was required to invoke the Interstate Agreement On Detainers and have Hicks present in court on August 8, or present a motion showing "extraordinary cause" for a continuance. Holding that "[t]here was no such motion," Judge Pollitt dismissed the eight-count criminal information.

### (2)

Maryland Rule 746 became effective on July 1, 1977 as part of a complete revision of the Chapter 700 Rules relating to "Criminal Causes" in the circuit courts of the counties and in the Criminal Court of Baltimore. The precursor of Rule 746 was former Rule 740, adopted on June 1, 1972. It provided: "The date of trial and postponements shall be governed by Code, Article 27, section 591." Section 591, enacted by ch. 212 of the Acts of 1971, provided:

> "(a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any

criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court or the Criminal Court of Baltimore City in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than six months from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The date established for the trial of the matter shall not be postponed except for extraordinary cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

"(b) The judges of the Court of Appeals of Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the Criminal Court of Baltimore City and in the various circuit courts throughout the State of Maryland."

In *Young v. State,* 15 Md. App. 707, 292 A. 2d 137 (1972), the Court of Special Appeals held that the provisions of § 591 were intended by the legislature to be directory and not mandatory because it had not explicitly provided the extreme sanction of dismissal of an indictment for administrative noncompliance. We adopted that view by summarily approving the opinion of the Court of Special Appeals. *See Young v. State,* 266 Md. 438, 294 A. 2d 467 (1972).

Section 591 is plainly a declaration of legislative policy designed to obtain prompt disposition of criminal charges; its enactment manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons. Judge Jerrold Powers, speaking for the court, in *Guarnera v. State,* 20 Md. App. 562, 318 A. 2d 243 (1974), highlighted the problem underlying enactment of § 591 in these forceful words:

"Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay

in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time 'spinning their wheels', in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the 'system', for they are the people who run that system.

"When the Legislature has expressed the will of the people [in § 591] by saying that the date established for the trial of a criminal case shall not be postponed except for extraordinary cause, and has denied all judges but the administrative head of the court authority to exercise even that curtailed power, the message should be loud and clear to the bench, the bar, parties, witnesses, and to the public, that trials must not and will not be postponed for ordinary reasons.

"And all to whom this message has been sent must understand that it makes not the slightest difference whether a continuance requested is the fifth, the third, or the very first — the reasons for it must satisfy the administrative judge that they meet the test of extraordinary cause. All persons concerned with the trial of a criminal case in the courts of Maryland must be held to know that, barring good cause of an extraordinary nature, the case will go to trial on the date scheduled. And all persons concerned must be entitled to rely upon that knowledge."

Judge Powers' admonitions in *Guarnera* were largely unheeded, a predictable result so long as under *Young* § 591

was to be accorded directory rather than mandatory force. By our adoption of Rule 746 in 1977, we intended to supersede the provisions of § 591 (a) and put teeth into a new regulation governing the assignment of criminal cases for trial. We did so pursuant to the authority vested in the Court by Article IV, § 18 (a) of the Constitution of Maryland to make rules having the force of law governing "practice and procedure in and the administration of the ... courts." We deemed it essential, as is evident from the language of Rule 746, to place mandatory controls over the scheduling of criminal cases for trial, and over their postponement, to assure that criminal charges would be promptly heard and resolved. Rule 746 retains the "extraordinary cause" standard of § 591 and former Rule 740 as the sole basis justifying a trial continuance, but it alters the triggering mechanism, and substantially reduces the time period, by and within which trials are to be scheduled. Additionally, the rule vests power in the county administrative judge to authorize other judges to grant continuances. The provisions of Rule 746 are of mandatory application, binding upon the prosecution and defense alike; they are not mere guides or bench marks to be observed, if convenient. Accordingly, Judge Pollitt was correct in holding that Rule 746 is mandatory and that dismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial within the 120-day period prescribed by the rule and where "extraordinary cause" justifying a trial postponement has not been established.

We think Judge Pollitt was in error, however, in concluding that the State had failed to make a motion at the August 8 hearing establishing the requisite "extraordinary cause" under the rule.

As heretofore indicated, the prosecutor at the August 8 hearing advised the court that Hicks was in a Delaware prison and for that reason was not present for trial. He also informed the court that Hicks would be available for trial the following month when he would be released by Delaware authorities to serve an earlier imposed Maryland sentence. Judge Pollitt ordered the case continued on the ground that

Hicks could not be tried *in absentia.* The colloquy between the prosecutor and the court, though brief, clearly established the reason for Hicks' absence and implicit in it was the prosecutor's request for a change of trial date, coupled with a representation that Hicks would be available for trial in September. We think the prosecutor's statement, together with the court's decision continuing the case because of Hicks' absence, was tantamount to its having acknowledged and granted a Rule 746 motion made in open court based on a showing of "extraordinary cause."

Determining what constitutes "extraordinary cause" under Rule 746 is, of course, dependent upon the facts and circumstances of each case.[3] *See, e.g., Bethea v. State,* 26 Md. App. 398, 338 A. 2d 390 (1975); *Guarnera v. State,* 20 Md. App. 562, 318 A. 2d 243 (1974). Clearly, however, it is cause beyond what is ordinary, usual or commonplace; it exceeds the common order or rule and is not regular or of the customary kind. See the definition of "extraordinary" in the American Heritage Dictionary, Webster's New International Dictionary, and Black's Law Dictionary (4th ed.). Of course, the right of a defendant in a criminal case to be present at every stage of his trial is a common law right preserved by Article 5 of the Maryland Declaration of Rights, *Bunch v. State,* 281 Md. 680, 683-84, 381 A. 2d 1142 (1978), and by Maryland Rule 724 a. Thus, where the defendant does not appear for trial, through no fault of his own or of the State, "extraordinary cause" for a postponement would plainly appear to exist.

It is true that the State could have invoked the provisions of the Interstate Agreement On Detainers in an effort to obtain Hicks' presence in Maryland on the scheduled trial date, but it was under no obligation to do so simply to satisfy the requirements of Rule 746. *See United States v. Dowl,* 394 F. Supp. 1250 (D. Minn. 1975); *United States v. Cappucci,* 342

---

3. Most jurisdictions with rules or statutes similar to Rule 746 appear to require a showing of "good" or "sufficient" cause, rather than "extraordinary cause." Some jurisdictions specifically enumerate allowable causes for delay. *See generally* American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial (Approved Draft 1968).

F. Supp. 790 (E.D. Pa. 1972). The Interstate Agreement contains its own provisions fixing the time frame within which cases must be brought to trial (see footnote 1); Rule 746 did not intend to preempt these provisions. Were it otherwise, the State would be required in every case, irrespective of the circumstances and without regard to the prisoner's desire for a trial, to itself invoke the provisions of the Interstate Agreement and promptly try all prisoners incarcerated in penal facilities of the fifty states on outstanding Maryland criminal charges upon which detainers had been filed. Where, as here, Hicks did not invoke the Agreement and was not present in court, but was to be returned by Delaware authorities to Maryland the month following the scheduled August 8 trial date, extraordinary cause justifying a postponement was plainly shown to exist.

In so concluding, we intend no departure from the established law that the mere fact that a defendant is incarcerated in another jurisdiction does not relieve the State of its Sixth Amendment obligation to grant the accused his constitutional right to a speedy trial. As we said in *Wilson v. State,* 281 Md. 640, 382 A. 2d 1053 (1978), in discussing the law pertaining to the constitutional right to a speedy trial under the Sixth Amendment, the defendant has no duty to bring himself to trial; the State has that duty which is not excused merely because the prisoner is incarcerated in another jurisdiction. The time limits prescribed by Rule 746 are not, however, the measure of the Sixth Amendment right to a speedy trial. While the rule was adopted to facilitate the prompt disposition of criminal cases, it stands on a different legal footing than the Sixth Amendment's constitutional right to a speedy trial. Thus, as to persons incarcerated in other jurisdictions, the State necessarily risks denying a prisoner's Sixth Amendment right, particularly where it is asserted by him, by not invoking the Interstate Agreement or other available procedures to bring the case to trial. That it does not do so within the 120-day period prescribed by Rule 746 does not mean that "extraordinary cause" does not exist for a postponement where, as here, the prosecution made what was equivalent to a timely motion in open court for a

continuance for reasons satisfying the requirements of the rule. Accordingly, we hold that Judge Pollitt erred in dismissing the criminal information filed against Hicks in this case.

> *Judgment reversed; case remanded to the Circuit Court for Wicomico County with instructions that it reinstate the criminal information and schedule trial in conformity with Rule 746; costs to be paid by appellee.*

*Davidson, J., dissenting:*

I agree with the majority that Maryland Rule 740 and Maryland Annotated Code article 27, section 591 (1957, 1976 Repl. Vol.), the predecessors of Maryland Rule 746, are "plainly a declaration of legislative policy designed to obtain prompt disposition of criminal charges." I also agree that by the adoption of Rule 746 this Court intended to "put teeth into a new regulation governing the assignment of criminal cases for trial." I agree that the provisions of Rule 746 are mandatory and are not "mere guides or bench marks to be observed, if convenient." I further agree that dismissal is the appropriate sanction for a violation of that Rule. Moreover, I agree that the proceedings on 8 August implicitly involved a motion for a postponement. I disagree, however, that in this case the State has shown "extraordinary cause" for a postponement.

The purpose of Rule 746, which requires an accused to be tried within 120 days of his or his attorney's appearance, is to protect society's interest in an effective criminal justice system. Society's representatives, and not the accused, are the ones who must protect that interest. Accordingly, it is the obligation of those responsible for the administration of justice and not the accused, to bring the accused to trial within the prescribed period of time. In my view, that obligation includes the duty to invoke the provisions of the Interstate Agreement on Detainers (Agreement), Md. Ann. Code art. 27,

§ 616A-616R (1957, 1976 Repl. Vol.), or to use any other available procedure. There is no obligation on the accused to invoke the Agreement.

Here the accused's failure to appear for trial resulted from the State's failure to invoke the Agreement. Because it was the State's fault and not the fault of the accused that he failed to appear for trial, the State failed to establish "extraordinary cause" for a postponement. Accordingly, I respectfully dissent.

The requirement that criminal offenses be promptly tried "has its roots at the very foundation of our English law heritage." *Klopfer v. North Carolina,* 386 U. S. 213, 223, 87 S. Ct. 988, 993 (1967). It was first articulated in the Magna Charta in 1215 and presently appears in the Sixth Amendment to the United States Constitution and the constitutions of almost all of the 50 states. *See, e.g.,* Md. Declaration of Rights art. 21. Moreover, most states have statutes or court rules which require that trial be brought within a definite period of time. 386 U. S. at 223-26, 87 S. Ct. at 993-95; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial at p. 2. (Approved Draft 1968); Note, *The Right to a Speedy Criminal Trial,* 57 Colum. L. Rev. 846, 847 (1957). These requirements, whether contained in the United States Constitution, state constitutions, statutes, or court rules, not only preserve individual freedom, but also protect the public interest. They are an integral part of the process of restraining those guilty of crime and deterring those contemplating it. *Dickey v. Florida,* 398 U. S. 30, 42, 90 S. Ct. 1564, 1571 (1970) (Brennan, J., concurring).

The societal interest in prompt trials "which exists separate from, and at times in opposition to, the interests of the accused," *Barker v. Wingo,* 407 U. S. 514, 519, 92 S. Ct. 2182, 2186 (1972), has been delineated, in Sixth Amendment cases, by the United States Supreme Court. In *Barker v. Wingo,* 407 U. S. 514, 519-21, 92 S. Ct. 2182, 2186-87 (1972), Justice Powell, speaking for the Court, said:

> "The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban

courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes... Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

"If an accused cannot make bail, he is generally confined, as was Barker for 10 months, in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions 'has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult.' At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners.

"A second difference between the right to a speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof." (Footnotes omitted.)

Additionally, in *Dickey v. Florida,* 398 U. S. 30, 43, 90 S. Ct. 1564, 1571 (1970), Justice Brennan, concurring, said:

"Deliberate governmental delay in the hope of

obtaining an advantage over the accused is not unknown. In such a circumstance, the fair administration of criminal justice is imperiled. The Speedy Trial Clause then serves the public interest by penalizing official abuse of the criminal process and discouraging official lawlessness. Thus the guarantee protects our common interest that government prosecute, not persecute, those whom it accuses of crime." (Citation omitted.)

In Maryland, the societal interest in prompt trials has also been delineated in cases in which the requirement of prompt trials has been established by statute or court rule rather than by the United States or the Maryland Constitution. *E.g., Guarnera v. State,* 20 Md. App. 562, 573-74, 318 A. 2d 243, 248-49, *cert. denied,* 272 Md. 742 (1974). Indeed, in this very case the majority recognizes that the purpose of Rule 746 and its predecessors, Rule 740 and article 27, section 591, was to avoid "detrimental effects to our criminal justice system." Thus, whether contained in a constitution, statute, or court rule, a primary purpose of a requirement of prompt trials is to maintain public order and public confidence in the criminal justice system.

Although constitutional as opposed to statutory and court-made requirements [1] all serve the same purpose, they differ in scope and application. In order to resolve the issue in this case, it is necessary to understand these differences and the interrelationship between constitutional and statutory prompt trial requirements.

In *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182 (1972), the Supreme Court considered the prompt trial requirement established by the Sixth Amendment. The Court decided that a balancing test should be used to determine whether a prompt trial has been accorded an accused. Under that test, four factors must be considered — the length of the delay, the reason for the delay, the accused's assertion of the right, and prejudice to the accused. 407 U. S. at 529-30, 92 S. Ct. at

---

1. Hereinafter, the term "statutory requirements" shall refer to both statutory and court-made requirements.

2191-92. In reaching this result, the Court expressly refused to rule that an accused must be tried within a specified period of time. The Court said:

> "The result of such a ruling would have the virtue of clarifying when the right is infringed and of simplifying courts' application of it. Recognizing this, some legislatures have enacted laws, and some courts have adopted procedural rules which more narrowly define the right.
>
> . . .
>
> "But such a result would require this Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which we should confine our efforts. We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. *The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise.*" 407 U. S. at 523, 92 S. Ct. at 2188 (footnotes omitted) (emphasis added).

This case establishes that state statutory prompt trial requirements may go beyond the Sixth Amendment balancing test and may broaden the scope and applicability of the Sixth Amendment prompt trial requirement by utilizing more rigid standards and narrower definitions in determining what constitutes a prompt trial. It demonstrates that state statutory prompt trial requirements are intended to implement the Sixth Amendment prompt trial requirement and to increase its effectiveness in reducing delay.

The legislative history of the Federal Speedy Trial Act of 1974, 18 U.S.C.A. § 3161 (1979 Cum. Supp.), which is analogous to state statutory prompt trial requirements in that it established a federal plan to insure that an accused is brought to trial within 100 days of arrest or summons,

exemplifies the fact that statutory prompt trial requirements are intended to implement and increase the effectiveness of the Sixth Amendment requirement. The Report of the United States House of Representatives on the Federal Speedy Trial Act of 1974 states in pertinent part:

> "The purpose of this bill is to assist in reducing crime and the danger of recidivism by requiring speedy trials. . . .
>
> . . .
>
> "The Committee finds that *the adoption of speedy trial legislation is necessary in order to give real meaning to that Sixth Amendment right.*
>
> . . .
>
> "The Supreme Court has held that the right to a speedy trial is relative and depends upon a number of factors. . . . The task of balancing these factors and arriving at a conclusion which is fair in all cases is a difficult task. It provides no guidance to either the defendant or the criminal justice system. *It is, in effect, a neutral test which reinforces the legitimacy of delay.*" H.R. Rep. No. 1508, 93d Cong. 2d Sess., *reprinted in,* [1974] U. S. Code Cong. & Ad. News 7401, 7402, 7404-05 (emphasis added).

Additionally, practical experience shows that statutory requirements not only were intended to, but do in fact, exceed the prompt trial requirement of the Sixth Amendment. Indeed, where both Sixth Amendment and statutory prompt trial requirements exist, the Sixth Amendment requirement has proved of little practical use. Note, *The Right to a Speedy Criminal Trial,* 57 Colum. L. Rev. at 848. As stated in the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial at p. 2 (Approved Draft 1968):

> "If a statutory violation is found, there is seldom any inquiry into the alleged constitutional denial; and if the statute has not been violated, it is typically assumed that the constitution is satisfied."

It is clear, therefore, that statutory prompt trial requirements are intended to, and do in fact, broaden the scope and applicability of the Sixth Amendment requirement and increase its effectiveness in reducing delay by mandating that trials be held more promptly than is required by the Sixth Amendment. Those statutory requirements implement, effectuate, and "put teeth" into the Sixth Amendment. Given this interrelationship, it would be, in my view, incongruous to interpret a statutory requirement as being narrower in scope and applicability and, therefore, less effective than the Sixth Amendment requirement.

The majority recognizes that under the Sixth Amendment requirement "the defendant has no duty to bring himself to trial; the State has that duty which is not excused merely because the prisoner is incarcerated in another jurisdiction." Thus, the majority recognizes that in this case, if the accused were asserting a violation of the Sixth Amendment prompt trial requirement, the State, as part of its obligation to make a "diligent good-faith" effort to bring the accused to trial, would have had a duty to invoke the provisions of the Agreement or use other available procedures. *Dickey v. Florida,* 398 U. S. at 37-39, 90 S. Ct. at 1568-69; *Smith v. Hooey,* 393 U. S. 375, 383, 89 S. Ct. 575, 579 (1969); *Wilson v. State,* 281 Md. 640, 655-56, 382 A. 2d 1053, 1064. *cert. denied,* 439 U. S. 839, 99 S. Ct. 126 (1978); *State v. Dean,* 42 Md. App. 155, 162, 399 A. 2d 1367, 1372, *cert. denied,* 285 Md. (1979). Yet here, where a statutory requirement, Rule 746, *see* note 1 above, is at issue, the majority concludes not only that the State is excused from its duty to invoke the Agreement, but also that its failure to do what the Sixth Amendment would have required, constitutes "extraordinary cause" for a postponement. Thus, the majority transforms the State's failure to comply with a standard of the Sixth Amendment requirement into "extraordinary cause" for delay. This transformation narrows the scope and applicability of Rule 746 and makes it less effective in reducing delay than the Sixth Amendment requirement.

In my view, the majority offers neither a sound legal rationale, nor sound policy considerations, nor sound legal

authority to support its position. The only legal rationale the majority offers is that Rule 746 "stands on a different legal footing than the Sixth Amendment's constitutional right to a speedy trial." In my view, because that Rule was intended to implement the Sixth Amendment requirement by broadening its application and scope, thereby increasing its effectiveness in reducing delay, the "different legal footing" upon which Rule 746 stands compels the conclusion that the State is not excused from its duty to persons incarcerated in other jurisdictions, including its duty to invoke the Agreement, or to use other available procedures to bring the accused to trial.

In addition, the only policy consideration the majority offers in support of its position is that the State should not be inconvenienced by being "required in every case, irrespective of the circumstances and without regard to the prisoner's desire for a trial, to itself invoke the provisions of the Interstate Agreement and promptly try all prisoners incarcerated in penal facilities of the fifty states on outstanding Maryland criminal charges upon which detainers had been filed." In short, the majority suggests that as a matter of policy the State should not be required to provide to persons accused of Maryland crimes, who are confined in penal facilities outside of Maryland, the same prompt trial that the State is required to provide to persons accused of Maryland crimes, who are either confined in Maryland penal facilities or released on bond. In my view, there is no rational basis for this distinction. The preservation of the societal interest in prompt trials should not be dependent upon the location of the accused.

Moreover, the only legal authority offered by the majority in support of its position is inapplicable. *United States v. Cappucci,* 342 F. Supp. 790 (E.D. Pa. 1972), concerned time constraints under the Agreement. There the United States District Court reaffirmed the elementary principles that under the Agreement the State has no duty to invoke its provisions, that either the accused or the State may request temporary transfer for trial, and that its time constraints are not applicable until the Agreement has been invoked by either

the accused or the State. *E.g., United States v. Mauro,* 436 U. S. 340, 351, 361-64, 98 S. Ct. 1834, 1842, 1846-49 (1978); *State v. Barnes,* 273 Md. 195, 209-11, 328 A. 2d 737, 745-47 (1974); *Davidson v. State,* 18 Md. App. 61, 65-68, 305 A. 2d 474, 478-79 (1973). That court neither considered nor discussed whether under a statutory prompt trial requirement the State had a duty to invoke the Agreement. *Cappucci* is, therefore, inapposite.

*United States v. Dowl,* 394 F. Supp. 1250 (D. Minn. 1975), primarily concerned the Sixth Amendment prompt trial requirement. In dicta, the United States District Court in *Dowl,* like the court in *Cappucci,* recognized the principle that under the Agreement the State has no duty to invoke its provisions. Significantly, however, in evaluating the "reason for delay" factor of the balancing test set forth in *Barker v. Wingo,* 407 U. S. 514, 531, 92 S. Ct. 2182, 2192 (1972), that court reiterated the elementary principle that under the Sixth Amendment requirement, the fact that an accused is incarcerated in another jurisdiction does not excuse the State from its duty to provide a prompt trial. That court attributed the delay resulting from the State's failure to invoke the Agreement to the State. 394 F. Supp. at 1254-55. In *Dowl,* like in *Cappucci,* the court neither considered nor discussed whether under a statutory prompt trial requirement the State had a duty to invoke the Agreement. Accordingly, *Dowl* is also inapposite. Thus, neither of the cases relied upon by the majority supports its position that under a statutory prompt trial requirement, the State has no duty to invoke the Agreement.

The majority additionally suggests that the State was excused from its duty to bring the accused to trial within the time specified by Rule 746 because the accused did not himself invoke the Agreement. In my view, the fact that the accused made no effort to invoke the Agreement is immaterial.

In *Barker,* when the Supreme Court was developing the Sixth Amendment standard to be used in determining whether an accused has been afforded a prompt trial, it considered whether an accused should be required to make

a demand for a prompt trial, or be deemed to have waived any consideration of the right. The Court said that there was no justification for:

> "placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. *Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.*" 407 U. S. at 527, 92 S. Ct. at 2190 (footnotes omitted) (emphasis added).

The Court cited with approval the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial at p. 17 which said:

> "[T]he demand requirement is inconsistent with the public interest in prompt disposition of criminal cases. . . . The trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interest to seek prompt disposition of the charge."

The Court expressly rejected the rule that an accused "who fails to demand a speedy trial forever waives his right." 407 U. S. at 528, 92 S. Ct. at 2191. This case establishes that because of the societal interest in prompt trials, the State has the obligation to provide a prompt trial regardless of whether the accused demands one.

In essence, the majority has done under Rule 746 what is forbidden under the Sixth Amendment. It has determined that an accused who does not make a demand for a prompt trial by invoking the Agreement has waived his right under Rule 746 and, therefore, the State is entitled to delay his trial. Because, in my view, Rule 746 was intended to implement the Sixth Amendment prompt trial requirement by broadening its application and scope and increasing its effectiveness in reducing delay, the majority's result is untenable.

More important, to permit trials to be delayed because an accused fails to invoke the Agreement is contrary to the societal interest which Rule 746 was designed to protect. The Rule declares as public policy that the societal interest is to be preserved by trying an accused within 120 days. In essence, the Rule represents *society's* demand for a prompt trial. The majority's insistence that the accused has a duty to invoke the Agreement results in permitting the accused, by his inaction, to frustrate public policy and thwart society's demands.

The conclusion that an accused's failure to invoke the Agreement is immaterial is supported by a recent decision of the United States Supreme Court. In *United States v. Mauro,* 436 U. S. 340, 364, 98 S. Ct. 1834, 1849 (1978), the accused initially contended that the government, which had invoked the Interstate Agreement on Detainers Act (Federal Agreement),[2] 18 U.S.C. App., pp. 1395-1398 (1976), to transfer him from a Massachusetts prison to New York for trial, violated Article IV (e)[3] of the Federal Agreement by returning him to Massachusetts before his New York trial. Additionally, he contended that the government had violated Article IV (c)[4] of the Federal Agreement by failing to try him within 120 days after it invoked the Federal Agreement by initiating the disposition of charges underlying a previously lodged detainer. The Court considered the question whether an accused who had not only failed to assert his right to be tried in New York before he was returned to Massachusetts,

---

**2.** The Federal Agreement is similar to the Maryland Agreement.

**3.** The Interstate Agreement on Detainers Act, 18 U.S.C. App., pp. 1395-1398 (1976), art. IV (e) provides:

"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V (e), hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

**4.** The Interstate Agreement on Detainers Act, 18 U.S.C. App., pp. 1395-1398 (1976), art. IV (c) provides in pertinent part:

"[T]rial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

but indeed had requested his return to Massachusetts before his New York trial, had waived his objection to his transfer under Article IV (e), and if so, whether his failure to invoke that provision constituted a waiver of his claim that the government violated Article IV (c) by failing to try him within 120 days after its invocation of the Federal Agreement. The Supreme Court agreed with the United States Court of Appeals for the Second Circuit, *United States v. Ford,* 550 F. 2d 732, 742 (2d Cir. 1977), *aff'd,* 436 U. S. 340, 98 S. Ct. 1834 (1978), that the accused had waived his right under Article IV (e) not to be returned before trial, but that that waiver did not deprive him of his right under Article IV (c) to be tried within 120 days. The Supreme Court said that the accused's "failure to invoke the [Federal] Agreement . . . did not result in a waiver of his claim that the Government violated Art. IV (c)." 436 U. S. at 364, 98 S. Ct. at 1849. This case establishes that an accused's failure to invoke the Federal Agreement in order to assert rights given to him by the Federal Agreement does not relieve the government of its obligation under Article IV (c) of the Federal Agreement to try the accused within 120 days after initiating the disposition of charges underlying a previously lodged detainer.

The facts in *Mauro* are different from but analogous to the facts in this case. In *Mauro,* the government's obligation to bring the accused to trial within 120 days was mandated by the Federal Agreement. Here the State's obligation to bring the accused to trial within 120 days was mandated by Rule 746. In *Mauro,* the accused failed to invoke the Federal Agreement in order to assert his right under Article IV (c) of the Federal Agreement to be tried in New York before being returned to his original place of imprisonment in Massachusetts. Here the accused failed to invoke the Agreement in order to assert his right under Maryland Annotated Code article 27, section 616D [5] to be tried within

_____

5. Md. Ann. Code art. 27, § 616D (1957, 1976 Repl. Vol.) provides in pertinent part:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or

180 days of his invocation of the Agreement. Applying the principle of *Mauro* to the facts of this case leads to the conclusion that the accused's failure to invoke the Agreement is immaterial and does not excuse the State from its duty to bring the accused to trial within the 120 days prescribed by Rule 746.

The majority is correct when it asserts that "where the defendant does not appear for trial, through no fault of his own or of the State, 'extraordinary cause' for a postponement would plainly appear to exist." But, in my view, because the State had a duty to invoke the Agreement while the accused had no such duty, the accused's failure to appear for trial was the State's fault and not the fault of the accused. Under the same or similar circumstances, courts in other states have found that the State's failure to produce the accused for trial did not constitute either "cause" or "good cause" for a postponement. *People v. McLaurin,* 38 N.Y. 123, 126-27, 341 N.E.2d 250, 252, 378 N.Y.S.2d 692, 694 (1975); *People v. Winfrey,* 20 N.Y.S.2d 138, 141-42, 228 N.E.2d 808, 811, 281 N.Y.S.2d 823, 826-27 (1967); *People v. Piscitello,* 7 N.Y.2d 387, 388-89, 165 N.E.2d 849, 850, 198 N.Y.S.2d 273, 274-75 (1960); *Commonwealth v. Bass,* Super.Ct. 393 A. 2d 1012, 1014-15 (Pa. 1978); *Commonwealth v. Kovacs,* 250 Super.Ct. 66, 69-74, 378 A. 2d 455, 457-58 (Pa. 1977); *Commonwealth v. McCafferty,* 242 Super.Ct. 218, 221-24, 363 A. 2d 1239, 1240-41 (Pa. 1976). I cannot find here that under Rule 746 the State's failure to produce the accused for trial by invoking the Agreement or using other available procedures constitutes "extraordinary cause" for a postponement.

Judges Digges and Cole have authorized me to state that they join in this opinion.

---

complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

## ON MOTION FOR RECONSIDERATION

PER CURIAM:

The State has filed a motion requesting that we reconsider our holdings that Maryland Rule 746 is mandatory and that the sanction for non-compliance is dismissal of the criminal charges. The State further requests, in the event we decline to reconsider those holdings, that we give them purely prospective effect, controlling only those prosecutions which commence after the filing of our mandate in this case. The defendant has filed an opposition to the State's motion.

As explained in our initial opinion in this case, Rule 746, and its predecessor Rule 740, reflect the legislative policy embodied in Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 591, that there should be a prompt trial of criminal charges in the circuit courts and the Criminal Court of Baltimore. This policy was deemed of such importance that the General Assembly in enacting § 591, and this Court in adopting Rule 746, employed the word "shall" with reference to the deadline for trying criminal cases. Under settled principles of statutory construction, the word "shall" is ordinarily presumed to have a mandatory meaning. *Johnson v. State,* 282 Md. 314, 321, 384 A. 2d 709 (1978); *Moss v. Director,* 279 Md. 561, 564-565, 369 A. 2d 1011 (1977); *United States Coin & Currency v. Dir.,* 279 Md. 185, 187, 367 A. 2d 1243 (1977); *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169-170, 338 A. 2d 248 (1975), and cases there cited. Moreover, if it were intended that the deadline for trial of the case was not mandatory and could be overlooked whenever convenient, there would have been no necessity for the further provision in the statute and rule requiring "extraordinary cause" and permission of the county administrative judge for an extension of the deadline. Additionally, as discussed in our initial opinion in this case, and as confirmed by events since the filing of that opinion, giving § 591 and Rule 746 only "directory" effect results in almost wholesale violations of the statute and rule. We adhere to the view that *Young v. State,* 15 Md. App. 707, 292 A. 2d 137, summarily aff'd, 266 Md. 438, 294 A. 2d 467 (1972), should be overruled, that the

120-day trial date requirement of Rule 746 is mandatory, and that dismissal is ordinarily the appropriate sanction for violation of that requirement.

There are two circumstances, however, under which dismissal is not an appropriate sanction for violation of Rule 746.

First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120-day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30 days. In other words, the legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30-day requirement. For this reason, we do distinguish between the 120-day requirement and the 30-day requirement. While the 30-day requirement is mandatory for those persons involved in setting the trial date, we hold that dismissal of the criminal case is not an appropriate sanction for violation of the 30-day provision.

A second circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746. It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation. In this respect, the situation is analogous to the well-established principle that a criminal defendant who seeks or expressly consents to a mistrial, even though the required "manifest necessity" standard for the mistrial may have been absent, cannot take advantage of his own act and prevent a retrial on double jeopardy grounds. *See, e.g., United States v. Dinitz,* 424 U. S. 600, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U. S. 470, 484-485, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971); *Jourdan v. State,* 275 Md. 495, 508,

341 A. 2d 388 (1975); *Cornish v. State,* 272 Md. 312, 318-319, 322 A. 2d 880 (1974).

Although we reject the State's request to modify our holdings that Rule 746 is mandatory and that dismissal is normally the proper sanction for violation of the rule's 120-day trial date requirement, we do agree with the State that these rulings should be given purely prospective application. We recognize that our initial opinion in this case did not overrule any prior interpretation of Rule 746. Nevertheless, the critical language of Rule 746, upon which our decision in this case was based, was essentially unchanged from the language in Art. 27, § 591, which was incorporated by reference in former Rule 740 and was construed as being only directory in *Young v. State, supra.* Consequently, our holdings in the instant case did overrule a prior interpretation of the same language and did set forth a new interpretation of that language. Thus, the case is an appropriate one for considering whether such new interpretation should be given only prospective effect.

The principles governing the retroactivity of new rulings by courts in criminal cases, and the numerous Supreme Court cases in this area, were extensively dealt with by both the majority and dissenting opinions in *Wiggins v. State,* 275 Md. 689, 717, 344 A. 2d 80, 95 (1975), and we shall not repeat in detail what was said in that case. Briefly, it was initially pointed out in *Wiggins* that retroactivity of application was required where the rule involved affects the integrity of the fact-finding process, or where it is a non-procedural rule that would render a trial constitutionally impermissible (*e.g.,* a new double jeopardy ruling), or where it renders a certain type of punishment impermissible, 275 Md. at 701-707, 732-737. Under these criteria, it is clear that retroactivity of the new interpretation announced in the instant case is not required. It does not affect the integrity of the fact-finding process but is a sanction to compel compliance with the policy of prompt disposition of criminal cases. Although it does require the dismissal of criminal charges, it is, as pointed out in our initial opinion, a non-constitutional procedural rule.

Finally, it does not relate to the type of punishment to be imposed.

Where retroactivity is not mandated under the above criteria, a balancing test involving three prongs is employed to determine whether the new ruling should be applied prospectively only. Those three considerations are: (1) the purpose of the new ruling; (2) the reliance placed upon the old ruling; and (3) the effect on the administration of justice of a retrospective application of the new ruling. *Stovall v. Denno,* 388 U. S. 293, 296-297, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker,* 381 U. S. 618, 636, 85 S. Ct. 1731, 14 L.Ed.2d 601 (1965); *Wiggins v. State, supra,* 275 Md. at 700-701, 718, 737-741.

Where the purpose of the new ruling is not "concerned with the ultimate fact-finding determination of whether the accused did or did not commit the act he is said to have committed," *Wiggins v. State, supra,* 275 Md. at 708 (majority opinion), or put another way, where a major purpose of the new "ruling does not relate to the fairness or propriety of the verdict or sentence, but has other objects such as insuring ... compliance [by government officials] with the restrictions imposed upon them," *id.* at 738 (dissenting opinion), the new ruling is usually limited to subsequent cases. In the present case, the new interpretation announced does not relate to the fact-finding determination of whether a defendant did the act, but, like the exclusionary rule involved in *Linkletter v. Walker, supra,* is a prophylactic measure designed to insure compliance with the requirements imposed on the State regarding prompt trials of criminal cases. It is the type of new ruling that is almost invariably not given retroactive effect.

The other two "prongs" or considerations set forth in the above cases also clearly point to giving the new ruling prospective effect only. Obviously the State, the defense bar and the trial courts were relying upon the *Young* interpretation of Art. 27, § 591, for, as we stated in our initial opinion in this case, the provisions of § 591 "were largely unheeded." Moreover, in light of the number of pending cases which might have to be dismissed if the new interpretation

is applied to them, the effect on the administration of justice of a retroactive application would be substantial.

While *Stovall, Linkletter* and *Wiggins* involved new constitutional rulings, the principles there announced apply as well to new interpretations of statutory provisions or rules. *See, e.g., Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U. S. 481, 496, 88 S. Ct. 2224, 20 L.Ed.2d 1231 (1968); *Mastromarino v. Director,* 244 Md. 645, 648, 224 A. 2d 674 (1966). And under the principles set forth in those cases, the new interpretation of Rule 746 is an almost classic example of a ruling which should be given prospective effect only.

Rule 746, rather than being a rule that affects the admissibility of evidence or procedures at the trial itself, is concerned with what happens beginning with the appearance of counsel or the first appearance of the defendant pursuant to Rule 723. To apply the new interpretation of Rule 746 to any cases which have gone beyond that stage would be to give the interpretation a degree of retroactive effect. Therefore, our holdings in the instant case will be entirely prospective, applying only to future criminal prosecutions and only to those pending cases where, as of our mandate in this case, there have been no appearances of counsel or first appearances of defendants pursuant to Rule 723.