## JAMES JACKSON-EL, THE YOUNGER v. STATE OF MARYLAND

[No. 1076, September Term, 1979.]

*Decided June 12, 1980.*

The cause was argued before MORTON, MOYLAN and MacDANIEL, JJ.

*Patricia A. Logan, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Mark Cohen, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The profusion of alarm systems — state and federal, statutory and constitutional — prodding, measuring and

sometimes short-circuiting the progress of investigation and trial provides a veritable tintinnabulation of the bells. Constitutional due process may ring the bell on inordinate pre-charging delay and post-verdict delays. The filing of charges, moreover, may not timely make it under the wire according to various statutes of limitations. There is the statutory alarm clock regulating interstate detainers. There is yet a different statutory alarm clock regulating intrastate detainers. There is the constitutional speedy trial limitation provided both by the Sixth Amendment of the Federal Constitution and Article 21 of the Maryland Declaration of Rights. There is an additional statutory alarm provided by Art. 27, § 591, and implemented by Md. Rule 746. Within this cacophony, Md. Rule 1085 — limiting our power of review to those questions actually presented to the trial court — still abides, even as it does not with respect to all other issues. To direct the trial judge to harken to the ringing of a single bell is not to invite judicial appraisal of the entire belfry. In reviewing a decision below, we must ask, with John Donne, not simply for whom the bell tolls but also which bell is tolling.

The appellant, James Jackson-El, the Younger, was convicted by a Baltimore City jury, presided over by Judge David Ross, of murder in the second degree. At the trial stage, specifically upon his motion of July 3, 1979, he claimed that time had run out on the State because Md. Rule 746, then requiring that an accused be tried within 120 days "after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723,[1]" was ringing. *State v. Hicks,* 285 Md. 310, 403 A.2d 356, had just been decided as of June 25, 1979, and provided that the dismissal of the indictment was the appropriate remedy for a violation of Rule 746. The appellant's motion relied exclusively on this rule of court, and at the hearing on the motion on July 3, only this argument was made. Judge Ross ruled against the appellant on the ground that extraordinary cause for a delay beyond 120 days had been

---

1. The rule was amended on November 16, 1979, to substitute 180 days for 120 days.

shown by the State. The merits of that ruling are now moot, for on July 19, 1979, upon a motion for reconsideration of its opinion in *State v. Hicks, supra,* the Court of Appeals issued a per curiam supplemental note to that opinion, 285 Md. at 334, 403 A.2d at 368, pointing out that *Hicks* was to be applied only prospectively. The appellant does not now dispute the inapplicability of *Hicks* to his case. He now claims, rather, that time had run out on the State because a different bell was ringing — his constitutional right to a speedy trial under the Sixth Amendment. That question, however, was never presented to Judge Ross and was never ruled upon. The Sixth Amendment issue is not preserved for appellate review, Md. Rule 1085, and we will not examine its merits. To direct the court's attention to the running of a specific clock is not, *ipso facto,* to direct its attention to the running of all other possible clocks.

The appellant's remaining contentions will not detain us long. He claims that the evidence was not legally sufficient to permit the charge of murder in the second degree to go to the jury. He does not contest the sufficiency of the evidence to show the *corpus delicti* of the killing or his own homicidal agency. He urges rather that his own evidence of either excuse or mitigation was enough to entitle him to a judgment of acquittal as to murder. The jury was not obligated to believe the appellant's self-serving testimony in this regard. *Jacobs v. State,* 6 Md. App. 238, 242, 251 A.2d 33. At best, he generated a jury question and was, therefore, not entitled to a judgment of acquittal taking this issue from the jury. *Gilbert v. State,* 36 Md. App. 196, 209-210, 373 A.2d 311.

The appellant's contention that the trial judge erroneously permitted the prosecutor to cross-examine him as to his bad character is trivial in the extreme. The appellant volunteered on direct examination that he was "not allowed to go up in a certain neighborhood." In a very tightly limited cross-examination on this issue, the prosecutor sought to have the appellant explain what he meant by that. The appellant's answer was in classic Casey Stengelese and was utterly incomprehensible. The court curtailed any further

examination of the subject. Whether to permit a question to be asked is within the sound discretion of the trial judge, *Dove v. State,* 33 Md. App. 601, 606, 365 A.2d 1009, *rev'd on other grounds,* 280 Md. 730, 371 A.2d 1104, and we see no abuse of that discretion.

The appellant's final contention is that the court erred in permitting two knives found two weeks after the killing in the basement of the house where the killing occurred and underneath a bed where the appellant slept to be introduced into evidence. He claims further that the court erred in permitting expert testimony by the postmortem examiner to the effect that some of the wounds on the body of the victim were consistent with the shape and size of one of the knives. We see no error in the admission of this evidence, particularly in view of the fact that the appellant himself identified one of the knives in question as the knife which he used to stab the victim. In view of the appellant's admission of homicidal agency and his exclusive reliance on the defenses of either excuse or mitigation, his present contention is really beside the point.

*Judgment affirmed; costs to be paid by appellant.*