## IN RE: HOWARD L.

[No. 469, September Term, 1981.]

* * *

## IN RE: JULIUS B.

[No. 470, September Term, 1981.]

*Decided January 8, 1982.*

The cause was submitted on briefs to Moore, Lowe and Mason, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Malloy, Assistant Public Defender,* for appellants.

Submitted by *Stephen H. Sachs, Attorney General, Maureen O'Ferrall Gardner, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ilene J. Nathan, Assistant State's Attorney for Baltimore City,* for appellee.

Lowe, J., delivered the opinion of the Court.

This is another in a series of attempts to use dismissal of a juvenile delinquency petition as the sanction for an alleged technical violation of procedural time limits mandated by rules of the Court of Appeals. The rule in question, Md. Rule 914 b, provides that "[a]n adjudicatory hearing shall be held within sixty days after the juvenile petition is served on the Respondent."

In the two cases before us, an adjudicatory hearing was set in compliance with the rule. In Case No. 469 (In Re: Howard L.), the hearing date was within 18 days of such service, and in Case No. 470 (In Re: Julius B.), 21 days, both to be tried on December 16, 1980 in the Circuit Court of Baltimore City, Division for Juvenile Causes. In both instances the hearing was postponed at the appellants' requests over State objection. Counsel for both appellants expressly waived the 60 day requirement until the next adjudicatory hearing date, set for January 12, 1981. Before the cases were eventually heard, on March 3, 1981, the hearings were twice more postponed, but this time at the behest of the State over appellants' objections. Were we assessing fault, as in speedy trial cases, the State's failure to produce its victim-witnesses would appear to be the cause of the latter two postponements. Two and one-half months after the first postponements, the cases were heard and appellants were adjudicated delinquent.[1]

With good reason the State hesitates to contend that the 60 day rule requirement is not mandatory, nor does it even address a possible justification for the two postponements granted the State. Curiously, it merely contends that because the first postponement was at the juveniles' request,

---

1. In overruling appellants' exception to the juvenile court's finding, the court below held that, because of appellants' express waiver, the State had 60 days from January 12, 1981 to hold the adjudicatory hearing. Appellants point to the interval of time between their arraignments and the first hearing date, and contend that this period of time (18 days in Case No. 469 and 21 days in Case No. 470) should be tacked on to the subsequent delay from January 12 to March 3, 1981 (50 days) in determining whether the 60 day rule was violated. We will not decide whether appellants' waiver of the 60 day requirement encompassed the time period between arraignment and waiver, since we will hold that, regardless of any technical violation, dismissal is not the proper sanction in this case.

the sanction "cannot be dismissal," citing as basis for its reasoning two cases which address other rules unrelated to juvenile proceedings or procedures. While the State is wrong in declaring that in these instances dismissal "cannot" be the sanction, our review of the rule and the opinions of the Court that made the rule convinces us that in these instances dismissal *should not* be the sanction. But we hasten to note that, like the Court of Appeals in *In Re Dewayne H.*, 290 Md. 401 (1981), we do not address what that sanction should be; nor do we address the possibility that speedy trial rights may arise from delay, since those issues were not raised here or below.

Judge Smith pointed out for the Court of Appeals in *In Re Dewayne H.* that the context of words used has a bearing on their interpretation. *Id.* at 405. He illustrated his point with the case of *In Re James S.*, 286 Md. 702 (1980), which addressed a statute specifying that a juvenile "petition alleging delinquency shall be filed within 15 days after the receipt of a referral from the intake officer." The Court gleaned the legislative intent as to sanction for violation from a comparison of the statute with limitations statutes. Noting the similarity of language between the juvenile statute and the limitations statutes, the Court held that the same sanction — dismissal — should apply for noncompliance. *In Re James S., supra* at 713; *In Re Dewayne H., supra* at 405.

Judge Smith pointed out that the rule addressed in *In Re Dewayne H.* dealt with a mandated period within which disposition must be had following an adjudication of delinquency. Md. Rule 915 a. He noted that the imposition of dismissal in juvenile cases, especially where procedural rules relating to disposition have been violated, did not inure to the benefit of the juvenile, and quoted from our Court, as well as the Court of Appeals, to support that reasoning. He then concluded the case by saying:

> "Unlike the bringing of a civil or criminal proceeding where the applicable time limits are largely in the control of the party initiating the litigation,

neither party here had control over the date set for the disposition hearing. We do not have before us in this proceeding the question of what, if any, sanction other than dismissal of the proceeding might be applied. There was at least a suggestion that the juvenile judge might confer with the masters pointing out the mandatory nature of the rule. Conceivably there could be yet other remedies. The State as the representative of the general public has an interest in seeing that this juvenile is rehabilitated so that he becomes a useful citizen and in no way a menace to society. In that circumstance it simply does not follow that the proper sanction for violation of the rule is dismissal of the proceeding. The reasoning we have set forth from [*State v.*] *Hicks* [, 285 Md. 310 (1979)] is applicable here. The juvenile judge erred." 290 Md. at 407.

Not only is that reasoning persuasive to us, but we feel that it is binding when applied to a similar juvenile proceeding rule enacted by that Court. It is significant, we believe, that when the Court imposed the dismissal sanction in *In Re James, supra,* and narrowly avoided imposing the dismissal sanction in *Hicks, supra,* only by finding extraordinary cause for noncompliance, it was interpreting the intent of the Legislature. Although in the *Hicks* case, the Court said that, absent extraordinary cause, dismissal would be mandated pursuant to its own procedural rule, Md. Rule 746, it was only willing to impose such sanction to the extent that the rule tracked the legislative act, codified in Md. Ann. Code (1957, 1976 Repl. Vol.), Art. 27, § 591. It is also noteworthy that both the act and the rule appear to have been enacted to augment the constitutional speedy trial safeguards. But when addressing another mandatory provision of the same rule which went beyond the terms copied from the statute, the *Hicks* Court declined to impose the extreme sanction of dismissal.

"There are two circumstances, however, under which dismissal is not an appropriate sanction for violation of Rule 746.

First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120-day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30 days. In other words, the legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30-day requirement. For this reason, we do distinguish between the 120-day requirement and the 30-day requirement. While the 30-day requirement is mandatory for those persons involved in setting the trial date, we hold that dismissal of the criminal case is not an appropriate sanction for violation of the 30-day provision." *State v. Hicks, supra* at 335.

The language of the rule which we now consider, Rule 914 b, addresses the same subject as that addressed by Rule 746 and *Hicks, i.e.,* the scheduling of a hearing. Rule 914 b even anticipates a breach of its provisions in one part of its mandate, but imposes a sanction substantially less severe than dismissal of the petition.

"RULE 914. ADJUDICATORY HEARING.

. . .

b. *Scheduling of Hearing.*
An adjudicatory hearing shall be held within sixty days after the juvenile petition is served on the respondent. However:
(i) if a waiver petition is filed, an adjudicatory hearing shall be held within thirty days after the court's decision to retain jurisdiction at the conclusion of the waiver hearing; and

(ii) if the respondent is in detention or shelter care, the adjudicatory hearing shall be held within thirty days from the date on which the Court ordered continued detention or shelter care. If an adjudicatory hearing is not held within thirty days, the respondent shall be released on the conditions imposed by the court pending an adjudicatory hearing."

Nothing in that rule indicates in the slightest that the Court of Appeals intended the sanction imposed upon society for an administrator's violation to be dismissal of the petition. Nor do we see anything in the rule, or reasoning of the Court of Appeals, to suggest that delinquents be denied the benefits of rehabilitation anticipated by the Juvenile Causes Act because of a technical scheduling violation. Strict compliance with mandated procedures can certainly be administratively imposed without detriment to both the youth we hope to help and the society he has already once imposed upon.

*Judgments affirmed.*
*Costs to be paid by appellants.*