# DARRELL EDWIN BRISCOE AND THOMAS BLUE JOWERS v. STATE OF MARYLAND

[No. 704, September Term, 1980.]

*Decided March 6, 1981.*

The cause was submitted on briefs to MOYLAN, MOORE and MACDANIEL, JJ.

Submitted by *Claudia A. Cortese, Assistant Public Defender,* and *Alan H. Murrell, Public Defender,* for appellants.

Submitted by *Stephen Rosenbaum, Assistant Attorney General, Stephen H. Sachs, Attorney General,* and *John R. Salvatore, State's Attorney for Washington County,* for appellee.

MACDANIEL, J., delivered the opinion of the Court.

On February 15, 1980, in the Circuit Court for Washington County, appellants Darrell Edwin Briscoe and Thomas Blue Jowers pled guilty to first degree murder. They were convicted, and on May 12, 1980, Briscoe was sentenced to life in prison, while Jowers received a sentence of fifteen years' imprisonment. On appeal both appellants contend the court erred in failing to establish that they understood the nature of the offense to which they pled guilty, as required by Maryland Rule 731 c. Additionally, appellant Jowers contends that his guilty plea was entered involuntarily, and that the charges against him should have been dismissed because of a violation of Maryland Rule 746 a.

The victim, Jerry Bullitt, was shot in the back of the head with a shotgun sometime on Tuesday, June 26, 1979. Appellants had induced Bullitt to drive them from Mercersberg, Pennsylvania, to Hagerstown, Maryland; they planned to rob the victim en route. In statements given to the police following their arrest, both appellants admitted their participation in the offense, except that each claimed the other had fired the fatal shot.

I.

Appellants first argue that the record fails to disclose that each defendant entered his plea "voluntarily, with understanding of the nature of the charge and the consequences of the plea," as required by Maryland Rule 731 c.

We note that before the court accepted appellant Briscoe's plea it questioned him as follows:

"Q. Mr. Briscoe, have you received a copy of the charging document, have you read it, discussed it with your lawyer and do you understand all the charges against you?

A. I do.

Q. Mr. Hovermale [Briscoe's trial counsel], have you advised your client of the nature of the charges

against him and the consequences of a guilty plea to the First Count of First Degree Murder?

MR. HOVERMALE:   Yes, I have, your Honor.

Q.   Mr. Briscoe, do you understand the charge to which you are pleading guilty, that is First Degree Murder on June 26, 1979 of a Jerry Irwin Bullitt?

A.   Yes sir."

And prior to accepting appellant Jower's plea the court questioned him in like manner:

"Q.   Have you received a copy of the charging document, have you read it, discussed it with your lawyer and do you understand the charges against you?

A.   Yes sir.

Q.   Mr. Padula [Jower's trial counsel], have you advised your client of the nature of the charges against [him] and the consequences of a guilty plea?

MR. PADULA:   Yes, your Honor.

Q.   Mr. Jowers, do you understand the charge to which you are pleading guilty, that is First Degree Murder on June 26, 1979 of Jerry Irwin Bullitt?

A.   Yes sir."

Lately there has been some confusion as to exactly what Rule 731 c requires, but now that confusion is at an end. *State v. Priet,*   Md.   (1981) [No. 17, Sept. Term, 1980, filed January 14, 1981], has established that "[t]he test [in reviewing guilty pleas] . . . is whether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." (Slip Opinion, *State v. Priet, supra,* at 34.)

Elsewhere the Court stated:

"Consistent . . . with the rationale underlying our decision in *Davis* [*v. State,* 278 Md. 103 (1976)], Rule 731 c does not impose any ritualistic or fixed

procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered. The rule does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea. Rather, by its express terms, the rule mandates that a guilty plea not be accepted unless it is determined by the court, after questioning of the defendant on the record that the accused understands the 'nature' of the charge. This, of course, is an essential requirement of the rule and must be applied in a practical and realistic manner. It simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered. The nature of some crimes is readily understandable from the crime itself. Necessarily, the required determination can only be made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among other factors, the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea. *See, e.g., Brady v. United States,* 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), holding that the voluntariness of a guilty plea 'can be determined only by considering all of the relevant circumstances surrounding it.' *Id.* at 749."

(*State v. Priet, supra,* Slip Opinion at 29-30.)

In our view, considering the record as a whole, the trial judge could fairly determine that both appellants understood the nature of the charge to which they pled guilty. Since this is appellant Briscoe's only allegation of error, we shall affirm his conviction, and proceed to consider appellant Jower's other allegations of error.

## II.

Appellant Jowers also contends that his plea was involuntarily entered, and that the charges against him should have been dismissed for violation of Maryland Rule 746, § a of which provides:

"a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel)."

Appellant asserts he was brought to trial beyond the 180-day deadline set by the rule.

Our review of the record discloses the following facts. Appellant's counsel entered his appearance on August 22, 1979. On September 21, 1979, appellant filed a Motion for Removal, contending he could not receive a fair trial in Washington County. On November 9, 1979, the State filed notice of its intention to seek the death penalty. The trial judge had been aware that the parties had been engaged in plea negotiations and that they desired him to delay ruling on appellant's Motion for Removal.

On January 16, 1980, (still within the 180-day period prescribed by Rule 746 a) the trial judge held a conference in chambers to determine the status of the case. The parties advised the court that a plea bargain had been struck: the State agreed not to seek the death penalty and to drop all other charges against appellant provided that he plead guilty to first degree murder. The parties further advised the court that in view of their agreement appellant's Motion for Removal should be considered moot, not requiring a ruling.

There is nothing in the record to indicate how or when a date for hearing on the guilty plea was set. It appears that,

having reached agreement on a plea, the parties simply went along, oblivious to the fact that the 180-day rule might apply to their case. Appellant Jowers was incarcerated and it was obvious, or at least it should have been, that he would receive a substantial sentence, and that he would receive credit for time served. At any rate, trial was set for February 25, 1980 — seven days beyond the 180-day deadline.[1]

Against this background we can at least understand — if not condone — the trial court's reaction upon being advised on the day of trial that appellant had filed a Motion to Dismiss, pursuant to Rule 746. We find it necessary to quote the entire colloquy between the court and counsel regarding the motion.

"THE COURT: Mr. Padula, you represent Mr. Jowers?

MR. PADULA: I do, your Honor.

THE COURT: You have something preliminarily, Mr. Padula?

MR. PADULA: Yes, your Honor. With your permission I would like to file this written Motion to Dismiss.

THE COURT: Mr. Padula, I have your Motion to Dismiss and quite frankly I am shocked and surprised that you would file it. It's my recollection, Mr. Padula, that in a conversation that I had with you that you advised this Court that your client wished to enter a plea in this case, is that correct?

MR. PADULA: This is correct, your Honor.

THE COURT: *Are you advising me at this time that since a hundred and eighty days is now passed that you no longer wish to enter a plea in this case?*

MR. PADULA: *No, your Honor, for the Motion . . .*

---

1. Once again, there is nothing in the record to indicate how this date came to be set. Did appellant agree to set the trial for February 25th? Or did the State merely notify appellant of the date, and if so, when?

THE COURT: *Wait a minute. Just yes or no?*

MR. PADULA: *No.*

THE COURT: This case was never scheduled for trial because of your representation that there was going to be a plea, and of course, any incarceration that your client had he would be given credit for that, for any sentence which he incurred and, as a result, other cases were scheduled for trial and not your case. As a matter of fact, there's a Motion in this to remove this case to Garrett County, is there not?

MR. PADULA: Yes, there is.

THE COURT: And there was a Motion to remove filed in another case that was recently removed to Garrett County which was scheduled to start for trial in two weeks, isn't that correct?

MR. PADULA: That's correct, your Honor.

THE COURT: And didn't I advise you that I was going to act on the Motion unless I heard from you or your client whether or not there was to be a plea?

MR. PADULA: Yes, your Honor, you did.

THE COURT: And didn't I in fact tell you that if this case was going to be removed, it was going to go to trial?

MR. PADULA: Yes, your Honor, you did.

THE COURT: *So now you are telling me that since 180 days have now passed that you are now coming in here telling me that you are not going to enter a plea?*

MR. PADULA: *I didn't say that, your Honor. I'm filing a Motion to Dismiss under the Hicks Rule which I fell [sic] duty bound to do.*

THE COURT: *Is your client representing to you at this time that he is no longer going to honor his representation to you and to this Court that he intends to enter a plea in this case?*

MR. PADULA:  *No, your Honor.*

THE COURT:  *He is or is not?*

MR. PADULA:  *He is, depending your determination of the Motion.*

THE COURT:  Mr. Padula, I am shocked. I am absolutely shocked. Now, we don't play these games around here, Mr. Padula. When somebody comes as an officer of this Court and represents to this Court that their client intends to enter a plea, this Court, as far as it's concerned, takes that as being an officer of this Court speaking to the Court and being bound by it and not that they are offering that so that the case won't get removed or the case won't get scheduled for trial so we can wait for another 180 days to pass. Now, if your client is saying that he does not want to enter a plea to this case, then I will entertain the Motion and I will rule upon that Motion and I will act on the other Motions in this case. But the last action that was taken in this case was the representation by you on behalf of your client that your client desired to enter a plea, and that is the thing that is before this Court right now as far as this Court is concerned. Now, if your client is representing to you that he does not want to plea, it is certainly his right. He may do so, and I would advise you, Mr. Padula, that I would think then him having then changed his mind with regard to you that you would no longer be in a position to represent him. I'm not going to accept this Motion. I'm going to let the Judge in the other County take care of it. In fact you can take Mr. Jowers back to jail. I told you before that [if] this case got removed, there wasn't going to be any plea bargain in this case; that the State filed an intent to seek the death penalty and if this case was going to be removed, then it was going to be removed. If it wasn't going to be removed, then I wanted to know whether you were going to plead or not. You advised me that you were

going to plead. You did not at that time advise me that you were going to plead provided that you got to plead within two days or three days. You did not advise this Court nor to my knowledge anyone else that it was your intent to wait until 180 days passed and then file a Motion for a dismissal because the State's Attorney scheduled other cases ahead of yours.

MR. PADULA: Your Honor, may I be heard?

THE COURT: Alright, Mr. Padula.

MR. PADULA: What you said, your Honor, is exactly correct. You indicated to me and co-counsel I'm sure that you wanted to act on our Motion for Removal to some other County for trial on this case. Before removing the case you wanted to know whether or not a certain plea negotiation enter[ed] into between the State and defense would be accepted or rejected, and co-counsel and I did meet with our clients in January, January 14th or 15th.

THE COURT: Well within 180 days.

MR. PADULA: Well within 180 days.

THE COURT: Right.

MR. PADULA: And advised the Court on January the 16th that the case need not be removed, we would take the plea bargaining.

THE COURT: Well within 180 days.

MR. PADULA: Well within 180 days. But I do not know and somewhat hesitant to make a determination as to what my obligation is with respect to this rule.

THE COURT: Your obligation as an officer of this Court is to honor your commitments. If your client doesn't want to honor the commitment, then I suggest to you that you no longer have a position in this case. I will get Mr. Jowers another lawyer.

If you want to continue as Mr. Jowers' lawyer, that's okay too.

MR. PADULA: May I have your permission to discuss this with my client, your Honor?

THE COURT: Well, Mr. Padula, you filed a Motion to Dismiss for 180 days and I assume that 180 days are now passed and I assume that Mr. Salvatore will stipulate to that. Is that right?

MR. SALVATORE: That's correct, your Honor.

THE COURT: And I'm going to deny your Motion for the very reason I have stated, that this case would have gone to trial well within 180 days except for you represented to this Court that your client wished to plead guilty, and quite frankly, I think any waiting until the passage of 180 days rule and then filing such a Motion is a deliberate attempt to sandbag the State's Attorney and to mislead this Court and I'm just not going to have it. Your Motion is denied.

MR. PADULA: Your Honor, the Motion isn't filed to mislead the Court or to sandbag the State's Attorney I can assure you.

THE COURT: Most certainly is. Cannot be taken for any other thing. You're an officer of this Court and you tell this Court your client is going to plead guilty, I expect your client to plead guilty. If your client advises you he no longer wants to plead, I expect you to advise this Court of that also. I don't expect you to come in here and tell me that on the one hand you intend to honor your commitment if in fact this case is not dismissed because it hadn't been brought within 180 days. This case has only been delayed because of your representation to this Court that there would be a plea. I can assure you that this case would have been tried in the month of February had it not been for your representation.

MR. PADULA: I'm sure it would have been, your Honor.

THE COURT: That's right.

MR. PADULA: I wouldn't dispute that one bit, but when it wasn't the State had a month to set it in and they set it in within three hours . . .

THE COURT: What possible difference does it make, Mr. Padula, if your client is going to plead guilty and get credit for time served? Now, we have a lot of other cases that have got 180 day rule running against them. Are you telling me that as soon as you represent to this Court that your client intends to plead guilty, that we're supposed to march him in here ahead of everybody else?

MR. PADULA: Well, your Honor, I must confess that I don't know that a plea bargaining arrangement tolls 180 days. If it does, I stand in error.

THE COURT: That's not what's got me upset, Mr. Padula. What's got me upset is you told this Court there was going to be a plea.

MR. PADULA: Yes sir.

THE COURT: And you didn't say anything about — well, it's the 179th day, Judge, we're going to plead in this case — and then we let it go for a week and you come back a week later and say — gee, Judge, it's 186 days, now we want it dismissed. It just doesn't work that way, Mr. Padula. And I'm sorry. Now, your Motion is denied.

MR. PADULA: Well, are you going to file it and mark it denied?

THE COURT: It's filed.

MR. PADULA: Now, may I reask my question? May I have a moment to speak to my client?

THE COURT: You can speak to your client anytime you want to; he's going back up to jail and

I'm removing the case to Garrett County where I assume the State's going to prosecute on the First Count, unless your client wants to change his mind right here and now.

MR. PADULA: That's why I wanted a moment to speak with him, your Honor.

THE COURT: Alright, sit down. You can speak to him while we're doing Mr. Briscoe." (Emphasis added.)

In questions concerning application of Maryland Rule 746, the Court of Appeals' decision in *State v. Hicks,* 285 Md. 310 (1979), is dispositive. In that case the Court held that the Rule's 180-day requirement [2] is mandatory, and that the appropriate sanction for its violation is dismissal of the charges against a defendant. The Court admitted two specific exceptions to the Rule: first, where "extraordinary cause" exists and, second, where the defendant "seeks or expressly consents" to a trial date beyond the 180-day period. *Hicks, supra,* at 335. The Court expressed its view, as a general proposition, that "it would ... be entirely inappropriate for the defendant to gain advantage from a violation of the Rule when he was a party to that violation." *Id.*

The Court of Appeals took particular care to discuss the purpose which the Rule was designed to serve, and to demonstrate that its holding comported with the Maryland Legislature's clearly expressed intention to eliminate excessive scheduling delays and unjustifiable postponements, and so to obtain prompt disposition of criminal charges. *Id.* pp. 315-318. This recourse to "first principles" by the Court of Appeals is mirrored in our own opinion construing *Hicks, supra,* and applying Maryland Rule 746 a.[3] In *State v.*

---

**2.** On November 16, 1979, subsequent to its decision in *Hicks,* the Court of Appeals amended Maryland Rule 746 a, with immediate effect, to change the required trial date to not later than 180 days. Formerly, the Rule prescribed a 120-day period. Although, to be precise, *Hick's* holding referred to the 120-day Rule, the holding has been applied with equal force to the Rule as amended. *See Hughes v. State,* 288 Md. 216 (1980).

**3.** *See State v. Mines a/k/a Stephenson,* Md. App. (1981) [No. 949, September Term, 1980, filed March 3, 1981]. Judge Orth's opinion for this

*Lattisaw and Keeling,*    Md. App.    (1981) [No. 883, September Term, 1980, filed March   , 1981], defense counsel had inadvertently consented to a trial date beyond the 180-day period. Upon discovering his error, he moved for dismissal under the Rule and the motion was granted. The State appealed and we reversed, holding that dismissal of the indictment was inappropriate under the facts of the case. Judge Wilner expressed the opinion of this Court as follows:

> "We think that the court, in all good faith, gave too limited a reading to what the Court of Appeals said in *State v. Hicks;* and, as a result, it gave an interpretation to Rule 746 a that is unnecessary and incorrect.

> "Although the dissent in *Hicks* viewed the requirements of Rule 746 a primarily from the perspective of the defendant — as an extension of his Constitutional right to a speedy trial — the majority looked upon it more from a societal point of view, as a device to alleviate the problems caused to the criminal justice system by delays in initially scheduling cases for trial and by the inappropriate postponing of scheduled trial dates. *See* the discussion at pp. 316-318 of 285 Md. Both aspects are, of course, important; the point we make is that the Rule was not intended solely to confer new rights upon defendants, but also to hold their feet to the fire. As the Constitutional balancing test under *Barker v. Wingo,* 407 U.S. 514 (1972), implies, and as this very case so clearly indicates, delays in trial are not always and exclusively attributable to prosecutorial laxity." (Slip Opinion, at pp. 7-8.)

And, in *Henry Joseph Goins v. State,*    Md. App. (1981) [No. 849, September Term, 1980, filed March 4, 1981], appellant argued for dismissal of the charges against him for violation of the Rule, notwithstanding the fact that the delay

---

Court contains an excellent discussion of the origins of Rule 746, and the purposes it was designed to serve.

was directly attributable to lengthy psychiatric testing following his belated entry of a plea of not guilty by reason of insanity. We affirmed the conviction. Judge Moylan reviewed the Court of Appeals' decision in *Hicks, supra,* and stated the view of this Court that,

> "If we were to apply that portion of the Rule perversely and mindlessly, as the appellant urges, it would frustrate rather than serve the very purpose that gave birth to it. It is never sufficient to ask, 'What does the Rule say?' without making the more significant inquiry, 'What was the Rule designed to accomplish?' Fortunately, ample guidance has been provided in that regard. As Chief Judge Murphy carefully pointed out in *State v. Hicks,* at 285 Md. 318:
>
>> 'The provisions of Rule 746 are. . . binding upon the prosecution and defense alike. . . .'
>
> The majority of the Court of Appeals in *Hicks* made it very clear that Rule 746, implementing Article 27, Section 591, is a two-way street. In discerning the legislative intent behind Section 591, the Court of Appeals observed that the vexatious problem the General Assembly sought to remedy was the general problem of trial delay, civil as well as criminal, and operating to the detriment of society and the State just as surely as it sometimes operated to the detriment of criminal defendants." (Slip Opinion, at pp. 5-6.)

We find the approach taken in *Hicks, supra,* and in our own cases particularly instructive, and appropriate to a resolution of the issue raised here. We first observe that had appellant insisted upon a ruling on its Motion for Removal on January 16, 1980, it would have been practically impossible to have rescheduled trial in another county before expiration of the 180-day deadline. Had the motion been granted, and a violation of Maryland Rule 746 a subsequently alleged, we have no doubt the removal would have

been held to constitute "extraordinary cause" and the sanction of dismissal refused. As it was, however, the court only stayed its ruling on the motion upon advice that the parties had concluded plea negotiations, that appellant had agreed to enter a guilty plea and that his motion could therefore be considered "moot." Under these circumstances — where appellant first sought removal of the case and then sought to obviate the need for trial altogether by entering a guilty plea, all within the 180-day period — we think appellant must be deemed to have waived the sanction for failure to comply with Maryland Rule 746 a. We think that to hold otherwise would be precisely to permit appellant "to gain advantage from a violation of the Rule when he was a party to that violation," contrary to the view which the Court of Appeals expressed in *Hicks, supra,* at 335. Such a holding in this case could not possibly preserve or advance the interest which the Rule was designed to protect. No one's legitimate speedy trial interests — either the defendant's, the State's or society's in general — can be said to have suffered, for the simple reason that the parties here as much as agreed *that there would be no trial.* We do not mean to suggest that, once appellant agreed to enter his guilty plea, he was irrevocably bound to honor it. We merely hold that, having so agreed, within the period prescribed by Maryland Rule 746 a, he may not now complain of a violation of the Rule merely because his plea was not entered and accepted until after that period had expired.

As an alternate ground for affirmance as to this issue in the case, we note that, having entered his guilty plea, appellant must be deemed to have waived the right to object to a violation of Maryland Rule 746, for it is well-settled that "a plea of guilty, effectively accepted, waives all procedural objections, constitutional or otherwise, and all non-jurisdictional defects. . . ." *English v. State,* 16 Md. App. 439, 443 (1973). *And see Stevenson v. State,* 37 Md. App. 635 (1977).

As for appellant's contention that his guilty plea was involuntarily entered, he argues that the trial court's remarks, *supra,* coerced him into entering his plea. Having

carefully reviewed these remarks, we think that appellant's present assertion amounts to little more than a calculated attempt to capitalize upon the trial court's impatience. At the outset, we wish to emphasize that our holding here should by no means be construed to condone the trial court's unfortunate remarks — even though we may sympathize with its irritation. But, in the first place, the record clearly reflects that the trial court's remarks were not directed to appellant in any way, but rather to appellant's counsel, in response to the court's misperception that counsel had in some sense deceived the court. Furthermore, appellant's counsel indicated from the outset of the conference — before the trial court uttered its remarks — that appellant intended to plead guilty should his Motion to Dismiss be denied.[4] Finally, appellant can hardly have been unaware of the consequences had he decided not to enter a guilty plea: the State would have reinstated all the charges against him which were originally lodged, and it would have sought the death penalty once again. Under these circumstances, we hardly think appellant needed any "persuasion" from the trial court in order to enter his guilty plea. We think his present assertions are without merit and hold that his guilty plea was entered voluntarily.

*Judgment affirmed; appellants to pay the costs.*

---

4. We refer to the italicized portion of the colloquy reproduced *supra,* at pp. 5 and 6.