## SALVATORE J. GUARNERA v. STATE OF MARYLAND

[No. 284, September Term, 1973.]

*Decided April 17, 1974.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*Gary Huddles* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Michael Mitchell, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. Constitution of the United States, Amendment VI: Declaration of Rights of the Constitution of Maryland, Article 21. We have considered speedy trial rights in numerous cases. Among the more

recent are *State v. Lawless*, 13 Md. App. 220, 283 A. 2d 160 (1971), *cert. denied*, 264 Md. 749, *State v. Hunter*, 16 Md. App. 306, 295 A. 2d 779 (1972), *State v. Dubose*, 17 Md. App. 292, 301 A. 2d 32 (1973), and *State v. Jones*, 18 Md. App. 11, 305 A. 2d 177 (1973).

The State as well as the accused has a substantial interest in the prompt resolution of criminal charges. The right is not one-sided. In *State v. Dubose, supra*, Chief Judge Orth cited and discussed *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972) where Mr. Justice Powell said for the Court, at 519-20:

> "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. * * * Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation."

The legislative policy of Maryland implementing the constitutional requirement that persons accused of a criminal offense shall be tried promptly was declared by the enactment of the statute codified as Code, Art. 27, § 591, effective 1 July 1971. After establishing procedure for setting a date for trial § 591 says:

"The date established for the trial of the matter shall not be postponed except for extraordinary cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending."

The Court of Appeals thereafter adopted Maryland Rule 740 which provides that the date of trial and postponements shall be governed by § 591.

We held in *Young v. State*, 15 Md. App. 707, 292 A. 2d 137 (1972) that the language of the statute was directory, not mandatory, but that from 1 July 1971 forward, the proper procedures to be followed in the granting of all continuances and postponements would be those consonant with § 591. See also *State v. Hunter, supra*, p. 312-13.

The Sixth Amendment also guarantees the right of an accused "to have the Assistance of Counsel for his defence." The Declaration of Rights recognizes the right "to be allowed counsel." The right to assistance of counsel has been construed to mean the right to genuine and effective representation. This right was discussed by Judge Orth (now Chief Judge) for this Court in *English v. State*, 8 Md. App. 330, 259 A. 2d 822 (1969). He said, at 334-35:

"While an indigent defendant is entitled to the appointment of a counsel to assist him at his trial, see Maryland Rule 719, he is not entitled to the appointment of a counsel of his choice, but only to such counsel as the court may assign. This fulfills the constitutional guarantee so long as the counsel assigned affords the defendant a genuine and effective legal representation under all the circumstances of the particular case."

We further said, at 336:

"Of course, an accused may competently and intelligently waive his constitutional right to assistance of counsel. See *United States v. Wade*, 388 U. S. 218, 237, citing *Carnley v. Cochran*, 369 U. S. 506. 'The Constitution does not force a lawyer

upon a defendant.' *McCloskey v. Director*, 245 Md. 497, 503."

With this legal and philosophical backdrop we consider the appeal of Salvatore J. Guarnera from judgments of conviction in the Criminal Court of Baltimore on several narcotics charges. Trial was held before Judge Robert B. Watts, without a jury. Appellant asserts no error in the trial itself. He says primarily that the court erred in refusing to grant a continuance to enable him to retain a private attorney, thereby denying him the right to effective assistance of counsel, and secondarily that the court erred in denying his motion to suppress evidence seized in the execution of a search warrant.

Appellant was arrested in Baltimore on 9 August 1972 on a series of warrants charging violations of the narcotics laws. Bail was set on each charge, and it appears that appellant was held in jail. At a proceeding in the District Court on 30 August he was held for action of the grand jury, and was committed in default of bail.

The docket of the Criminal Court of Baltimore opens with an entry, 30 August 1972, "Commitment filed Jail." On 3 November 1972 an indictment containing 11 counts was filed, charging appellant with possession of several different controlled dangerous substances and of controlled paraphernalia.

On 21 November 1972 Judge Sodaro heard an application for bail reduction, filed by appellant in proper person. Bail theretofore set in amounts aggregating $27,000 was reduced to $10,000. A corporate bond in the reduced amount was filed on 4 December 1972, and appellant was released.

On 6 December 1972 the clerk docketed the appearance of an appointed Public Defender as counsel for Guarnera. The appearance was in the form of a copy of a letter sent on 4 December by the District Public Defender to Frank Cannizzaro, a member of the bar, advising him of his appointment, that his appearance could be stricken only by an order of the Chief Judge, and with a postscript, "Please see this man promptly at the City Jail."

Appointed counsel, with commendable promptness, filed on 8 December a motion for discovery and inspection, and a motion to suppress evidence because the search and seizure was illegal. The State answered the motion for discovery and inspection on 19 January 1973. The next docket entry, 29 January 1973 says: "Arraigned and Pleads: Not Guilty." There is no transcript of that arraignment, and no indication of who was present. A summons form in the record indicates that some witnesses, as well as appellant, were summoned to appear in court on 29 January. It shows service on appellant "c/o Bondsman." Another column of the same form was used for 28 March 1973, which was the day of the trial.

Other facts material to this appeal must be gleaned from one exhibit and from the transcript of what was said by the appellant, his assigned trial counsel, the Assistant State's Attorney, and Judge Watts on the day of trial and at the hearing on 16 April 1973 on a motion for new trial. The exhibit, filed by the appellant, was a letter dated 5 February 1973 to him from the office of the Public Defender requesting him to contact the office immediately for another interview to determine whether representation by the office should continue, since it had come to the attention of the office that he had been released on professional bail and was gainfully employed.

When the case was called for trial on 28 March 1973 before Judge Watts, Guarnera personally entered a plea of not guilty and elected to be tried by the court. Mr. Cannizzaro spoke to the court, referred to his appointment as counsel, and said:

> "Thereafter we had some considerable difficulties getting together, and both the client and myself, and the Public Defender's Office. I am respectfully suggesting today to the Court that as of this time right now I don't feel that I am fully and properly prepared to defend a case of this nature for this reason. Mr. Guarnera was out on professional bail when I was asked to represent him, and still is."

Judge Watts said, "You have to see Judge Foster. * * * It's not my decision." Counsel explained that he had addressed a letter to Guarnera as long ago as February 14th, telling him the date the case was scheduled for trial, but had heard nothing from him. Guarnera advised the court that he thought Mr. Cannizzaro was going to represent him, and when he got a notice from the Public Defender's office, he panicked. He said he wanted to dismiss Mr. Cannizzaro because he was not prepared, and that he was trying to get money together to hire a lawyer of his own choice. Mr. Cannizzaro pointed out that Guarnera had just told him there were witnesses that he didn't know existed.

The Assistant State's Attorney contended that the attempt to change attorneys was a delaying tactic, and said he had been in contact with Mr. Cannizzaro, who had been very diligent in efforts to locate Guarnera, and had sent numerous letters, with copies to the State's Attorney's office.

Judge Watts directed both counsel and Guarnera to see Chief Judge Dulany Foster, who is administrative judge of the eighth judicial circuit. Upon returning to the courtroom, counsel advised Judge Watts that they had explained the situation to Judge Foster, who directed that the trial proceed, with no postponement or continuance. Mr. Cannizzaro protested his position, said that he was not prepared, and that he did not want to participate in the case. Guarnera said that he would rather hire a lawyer, because he didn't think his counsel was prepared to handle the case.

The Assistant State's Attorney stated that Guarnera had hired a private attorney to get his bail reduced, and had put up the money for the bail. He said:

> "The Court will be made part of a great hoax if it allows this defendant to now claim that his lawyer is not prepared, and he had ample time to talk with his lawyer, and his lawyer did everything possible to contact him and prepare the case."

Guarnera said that he received counsel's letter notifying him of the trial, and also said that he didn't find out until

Friday (March 23rd) that he was supposed to go to court. He said the bondsman "and the lawyer that handled the case" called him. When Judge Watts asked him what he had done since Friday Guarnera said he tried to borrow money. Guarnera told the judge that he had witnesses he wanted to call, and they were readily available. It was developed that the purpose of calling the witnesses was to present evidence that the officers who executed the search warrant handcuffed Guarnera and beat him up.

The judge stated that he would start the case, and suggested that he would suspend early so the witnesses could be summoned in for the next morning. There was further colloquy about witnesses, and Guarnera's wish to hire his own lawyer. Much more was said, including another trip to see Judge Foster, with the same result. Before commencing the trial, Judge Watts summed up the problem. He said:

> " * * * we have problems of a man coming in the day of trial and saying, I don't want this lawyer. I want a chance to get another lawyer, and we have the same problem like this, where a man says, I want my own lawyer. I didn't get enough money, and I think up to now we have been pretty much postponing them. I say now that it has been advocated that unless the State can show a severe hardship, and very great detriment, that [there would be] lost witnesses, all of that type of thing, I think it might be grounds for reversal on effective representation of counsel, or selection of own counsel, and all of the rest of it. I was apprehensive about it.
>
> "Somewhere along the line, Mr. Cannizzaro, we are all part of the system. We are going to have to answer the question. This might be a good case to do it with.
>
> * * *
>
> "At the same time the thing that upsets me and

why I think this might be a good test case, I think it
is shown to me that he has been completely
negligent in not at least, since he had one lawyer
that he didn't have to pay, [in] preparing his trial
so that at least he would have had a lawyer then.
Letting you know if he ever got the funds he was
going to get his own lawyer, we wouldn't be in this.
He didn't answer any of your letters. All of that is
against him, and, of course, in that sense I suppose
there is some argument for forcing him to trial
today, but so I think what we'll do, is go on with the
trial and hopefully it might be a good test case, if
there is a conviction, because I think the Court of
Special Appeals, or somebody, or maybe we'll come
up with a Bench rule, or maybe the Chief Judge
would establish a rule that could be tested in Court,
but I think somewhere along the line we do have to
get these cases tried.

* * *

"Here it is March. So, you know, now he says to
me, I'm not prepared. That's on some ears rather
ludicrous. He had a lawyer sitting there waiting to
see him. He had a lawyer waiting to talk to him. I
think the law does say if you have a reasonable
opportunity to get a lawyer, not that you must have
one; it might be a rule to come up. I want to proceed
and say for the record, you have most respectfully
presented your point as a defense lawyer, and it is
well taken. I think the State's position also has
merit, and this is something that we will have to
work with until we get a very definitive answer."

In further colloquy, Guarnera said he wanted to retain his
own attorney and have him come back another time and
defend him. When the judge said that Mr. Cannizzaro could
sit with him, Guarnera said he would rather be tried
without a lawyer — he would rather handle it himself if he
couldn't have the lawyer of his own choice.

The judge ordered Mr. Cannizzaro to stay in the case,

against his wishes. The trial proceeded, with Mr. Cannizzaro generally following Guarnera's instruction that he not participate. The State presented one witness, a Special Agent of the Federal Bureau of Narcotics and Dangerous Drugs. The search and seizure warrant and supporting affidavit were admitted in evidence over objection. Both Guarnera, and on his instructions, his counsel, declined to examine the witness concerning the warrant. Judge Watts ruled that the affidavit was sufficient and the seizure pursuant to the warrant was lawful. He permitted the State to proceed. The witness then described the seizure of various controlled dangerous substances in the execution of the warrant, some of them from Guarnera's person, some elsewhere on the premises, and testified to the results of the chemical analyses of the material seized.

Counsel for Guarnera declined to cross examine the witness, taking the position that he had been discharged at the request of the defendant, and reasserting an objection to the whole proceeding. Guarnera likewise declined to ask any questions. The State rested. Guarnera's counsel moved for judgment of acquittal on all counts. The court granted the motion as to the charge of maintaining a common nuisance. Guarnera exercised his right to remain silent, and told the court that he didn't want to put on anything. The following colloquy took place:

"THE COURT: You don't want to call witnesses? I thought you wanted me to get that witness.

MR. GUARNERA: Your Honor, it can't be reached.

THE COURT: I'll suspend the hearing until tomorrow morning if you want.

MR. GUARNERA: Without a lawyer, I don't think it would do me much good.

THE COURT: I would be glad to hear anything she has to say; if she takes the witness stand and tells me what you proffered to me this morning, it might be very helpful to you.

MR. GUARNERA: Your Honor, I would rather not, because I think I'm being unjustly tried.

THE COURT: You do understand that I have given you the opportunity and will suspend the hearing now to give you the opportunity even with a summons?

MR. GUARNERA: I understand."

Judge Watts then found Guarnera guilty on the alternate lesser counts, charging simple possession of the several controlled dangerous substances found, and guilty of possession of controlled paraphernalia. After advising him of his right to file a motion for a new trial, Judge Watts told Guarnera:

"I will also say this to you, Mr. Guarnera, in the meantime you hire your own attorney, and if you want to put on additional information, I will consider very seriously striking out my verdict and re-opening the case to let you put on any testimony. I can't say any more than that."

At the hearing on the motion for a new trial the only contention was that the refusal of a continuance to afford Guarnera the opportunity to employ other counsel denied him the effective assistance of counsel. Mr. Cannizzaro told the court:

"I was just sitting here. I was told not to participate. I was discharged by this man, and let me admit first of all on the record that everything that occurred with regard to the problems in this case were brought on by Mr. Guarnera himself."

The motion was denied, and Guarnera was sentenced to two consecutive two year terms. Sentences on the other counts were concurrent.

First, we must understand whose exercise of discretion is being reviewed. Not the discretion of Judge Watts, for Code, Art. 27, § 591 took away his power to postpone the trial date of a criminal case. The rule we stated in *Jennings v. State,* 8

Md. App. 321, 259 A. 2d 547 (1969) when we said that "The granting or denial of a continuance is within the sound discretion of the trial court" was modified by § 591, which vested the exclusive power to postpone the trial date of a criminal case in the administrative judge of the court.[1] Even the power of the administrative judge to postpone is not entirely discretionary, but may be exercised only "for extraordinary cause shown by the moving party."

The root of the problem which troubled Judge Watts and counsel is the persistence of the long pervasive practice of allowing any party one or more continuances in any case, at least when it does not affirmatively appear that the right to request a continuance has previously been abused. There is no more validity in such a practice than there is in the pseudo-legal maxim that every dog is entitled to one bite. Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time "spinning their wheels", in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the "system", for they are the people who run that system.

When the Legislature has expressed the will of the people by saying that the date established for the trial of a criminal case shall not be postponed except for extraordinary cause, and has denied all judges but the administrative head of the court authority to exercise even that curtailed power, the

---

1. This does not mean that every request for a postponement of the date set for trial of a criminal case must be acted upon by the administrative judge. The trial judge may, in the exercise of his discretion, deny the request. Nor does the statute limit the discretion of a trial judge to control the proceedings, once the trial has begun.

message should be loud and clear to the bench, the bar, parties, witnesses, and to the public, that trials must not and will not be postponed for ordinary reasons.

And all to whom this message has been sent must understand that it makes not the slightest difference whether a continuance requested is the fifth, the third, or the very first — the reasons for it must satisfy the administrative judge that they meet the test of extraordinary cause. All persons concerned with the trial of a criminal case in the courts of Maryland must be held to know that, barring good cause of an extraordinary nature, the case will go to trial on the date scheduled. And all persons concerned must be entitled to rely upon that knowledge.

We cannot conceive that extraordinary cause for postponement of a trial can be shown when the reasons advanced for it are not only foreseeable, but are, at best, the fault of the moving party, and may well be the very result sought for by a cunningly devised strategy. Guarnera's excuses were, as Judge Watts observed, "on some ears ludicrous". He clearly demonstrated that he did not want, and declined to accept, the judge's repeated offers to help in assuring the assistance of counsel in his defense, and the opportunity to bring into court a witness Guarnera claimed he wanted.

Guarnera instructed Mr. Cannizzaro not to participate in the trial, and refused himself to participate. He stood resolutely and consistently on his contention that Mr. Cannizzaro was not prepared to render effective assistance, although Mr. Cannizzaro had been appointed almost four months before, and from the very day of his appointment had been diligent in doing what he could to make his services available. One is reminded of the adage that you can lead a horse to water, but you can't make him drink. Effective assistance of competent counsel was available and was tendered, indeed urged upon Guarnera, and was rejected out of hand.

This case in no way involves a question of Mr. Cannizzaro's readiness, from the beginning to the end, to

render genuine and effective assistance to Guarnera in the defense of the charges against him, nor of his competence to do so. On the contrary, the record reflects an admirable and tenacious devotion by Mr. Cannizzaro to the duty assigned to him, even in the face of Guarnera's evasion, and later renunciation of his counsel.

Nor does this case involve the waiver by an accused of his right to counsel and a preference to try his case in proper person. We discussed the requirements of such a waiver in *Taylor v. State*, 20 Md. App. 404, 316 A. 2d 296 (1974). See also *McCloskey v. Director*, 245 Md. 497, 226 A. 2d 534 (1967) and *Midgett v. State*, 223 Md. 282, 164 A. 2d 526 (1960). Appellant not only rejected the right to effective representation by counsel, but foreswore the right to represent himself. He was firmly resolved that there should be no defense whatever to the charges against him, through counsel or otherwise. He chose, instead, to roll over and play dead. He stood on his position that he was being unjustly tried.

Appellant's strategy may well have been the best available to him on the facts of the case. He was found not guilty on five counts of possessing a controlled dangerous substance in sufficient quantity to reasonably indicate an intent to manufacture and distribute it. Although he was found guilty on six possession counts, the aggregate of his consecutive sentences was four years. All of the evidence was seized in the execution of a search warrant. We have carefully examined the affidavit which was the basis for the issuance of the warrant. Probable cause was amply shown. The warrant was properly issued, and the property seized in its execution was properly admitted in evidence.

Chief Judge Foster, the administrative judge of the eighth judicial circuit, declined to give permission to postpone the trial of the case. In so doing, he exercised the limited discretion given to him by Code, Art. 27, § 591. He acted properly within the range of that discretion. The situation presented was not unlike that discussed by Chief Judge Murphy, then of this Court, in *Jennings v. State, supra*, where he said, at 323:

> "We think it altogether plain that appellant's request that he be permitted to discharge his court-appointed counsel and seek to retain private counsel was, under the circumstances, properly denied; to abide by appellant's request would be to subjugate the State's judicial process to the whim and fancy of the accused and thus enable him to frustrate the judicial process."

Although the delaying tactic involved was a different one, the comment of Chief Judge Murphy for the Court of Appeals in *State v. Jones*, 270 Md. 388, 312 A. 2d 281 (1973) is appropriate here. He said, at 394-95:

> "In addition, Jones' frequent requests for trial postponements, his alleged last minute need for additional time to locate a witness, his sudden announcement of dissatisfaction with his attorney when he was brought to trial, his request for extended additional time to employ his own lawyer, and his failure to do so, evidence a tactic of manipulation and delay."

Again, as Judge Gilbert said for this Court in *Conway v. State*, 15 Md. App. 198, 289 A. 2d 862 (1972) at 223-24:

> "We think appellant's election not to cooperate with his counsel and his refusal to attend all but selective portions of the trial were tactics employed by him to obfuscate the trial and an effort to gain a continuance, or, in the event of a conviction, a reversal."

And to put it most succinctly, we borrow a phrase written by Judge Moylan for this Court in *McIntyre v. State*, 17 Md. App. 526, 302 A. 2d 672 (1973), and say that Guarnera's request for a continuance "smacks of rank opportunism", and was properly denied.

*Judgments affirmed.*