472 A.2d 436

**William CALHOUN a/k/a William Burns Calhoun**

v.

**STATE of Maryland.**

**No. 145, Sept. Term, 1982.**

Court of Appeals of Maryland.

March 15, 1984.

Motion for Reconsideration Denied April 30, 1984.

**2**

Michael R. Braudes, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

The petitioner, William Calhoun, and a codefendant were indicted for murder, armed robbery, kidnapping and other offenses. The defendants were arraigned in the Circuit Court for Baltimore County on February 10, 1981, pursuant to Maryland Rule 723. Under Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.), Art. 27, § 591, and Rule 746, the 180-day time period for the trial expired on August 9, 1981.[1] The

---

1. Art. 27, § 591, provides as follows:
    "§ 591. Setting date for trial; postponement.
    (a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the circuit court in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than 180 days from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The date established for the trial of the matter shall not be postponed except for good cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

first scheduled trial date was April 29, 1981, but this was postponed because of Calhoun's insanity plea and his mental examination at Clifton T. Perkins Hospital. The new trial date was August 4, 1981, which was five days before the expiration of the 180-day deadline prescribed by § 591 and Rule 746.

In late July 1981, upon the motion of Calhoun's codefendant and over Calhoun's objections, a severance was granted. On August 4, 1981, both Calhoun and his codefendant appeared ready for trial. The State chose to proceed with the trial of the codefendant on an unrelated matter, and the State suggested that "by necessity" Calhoun's trial "would have to be postponed." The court then addressed Calhoun's attorney, and the following colloquy occurred:

"THE COURT: Well, do you wish to be excused then?

CALHOUN'S ATTORNEY: Your Honor, we were told that our trial date was August 4. We are here prepared to go to trial.

THE COURT: Well, have you heard the State said they are calling . . . [the other case] for trial?

CALHOUN'S ATTORNEY: Indeed I have, Your Honor. If the State wishes to move this Honorable Court for a postponement of my client's case I suppose the Court will

(b) The judges of the Court of Appeals of Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the various circuit courts throughout the State of Maryland.
Rule 746 states:
"Rule 746.  Trial Date.
   a.  *General Provision.*
Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.
   b.  *Change of Trial Date.*
Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

rule on that motion in due course. However, ... we are not assenting to any postponement in this matter.

THE COURT: Well, the request for a postponement of the criminal case is addressed generally to the ... administrative judge."

Calhoun and his attorney were excused. Despite the trial judge's statement, the prosecution did not seek a postponement from the administrative judge.

On August 14, 1981, 185 days after his arraignment, Calhoun filed a motion to set a trial date and requested a hearing on the motion. The hearing was held by Administrative Judge Cicone on August 24, 1981. At the hearing, the prosecuting attorney argued that the severance justified the delay in bringing Calhoun to trial. The prosecuting attorney added that on August 4, 1981,

"[t]he State wasn't requesting any kind of postponement. Judge Haile wasn't in a position where he had authority to grant a postponement....

[The trial judge], therefore, simply excused Mr. Calhoun and Mr. Daniels pending further Order of your Honor. That is why we are here today, to explain the situation, that ... [the case] was held in abeyance...."

The administrative judge reviewed the procedural history and stated:

"Why don't you go downstairs and get a new trial date. The only thing we can put on here—this is just to straighten out the record—the postponement was due to the severance and you had to call one of the defendants at that time....

"That will be noted on the file and a docket entry made.

"You go downstairs and get a trial date right now."

No mention was made of the expiration on August 9, 1981, of the 180-day time limit under § 591 and Rule 746.

Calhoun's trial was set for October 13, 1981, 245 days after his arraignment. On that date defense counsel moved that the charges against Calhoun be dismissed for noncompliance with § 591 and Rule 746. The State countered that there

was good cause for not trying the case within 180 days. The trial judge refused to dismiss the charges after assuming that the administrative judge had approved of the reasons for postponement. He added:

"[T]his is a long, involved case, and certainly if one peruses the file there is no indication of lack of activity on anybody's part, either the State's or the defense's, that would call into play the 180 day rule. Whatever period expired was chargeable in proper fashion to the defendant in this case or was otherwise waived or exonerated by a court." [2]

Trial was held, and the jury convicted Calhoun of murder, armed robbery, kidnapping, and use of a handgun in the commission of a crime of violence.

Calhoun appealed to the Court of Special Appeals, arguing that his motion to dismiss for a violation of § 591 and Rule 746 should have been granted, and raising other issues. That court affirmed in a 2–1 decision, *Calhoun v. State,* 52 Md.App. 515, 451 A.2d 146 (1982). The court reasoned that the severance constituted good cause for a postponement, that "the dismissal of counsel on August 4th in order to try the co-defendant constituted a *de facto* order of postponement by the trial judge pending approval by the Administrative Judge," and that such approval, "[a]lthough delayed," was given on August 24th when the administrative judge "acquiesce[d] in what had become a fait accompli." 52 Md.App. at 522–523, 451 A.2d 146. The dissenting judge took the position that whether or not the severance constituted good cause for a postponement, "the fact remains that no order of postponement extending the trial beyond the 180-day limit was granted." 52 Md.App. at 524, 451 A.2d 146.

---

**2.** The trial judge's statement reflects a confusion between the requirements of § 591 and Rule 746, on the one hand, and constitutional speedy trial analysis on the other. *See State v. Frazier,* 298 Md. 422, 428–429, 470 A.2d 1269 (1984); *Goins v. State,* 293 Md. 97, 106–109, 442 A.2d 550 (1982); *State v. Hicks,* 285 Md. 310, 320, 403 A.2d 356, on motion for reconsideration, 285 Md. 334, 403 A.2d 368 (1979).

**6**

We granted Calhoun's petition for certiorari,[3] which raised only the question of whether the motion based on § 591 and Rule 746 should have been granted. Consequently, under Rule 813, the other issues decided by the Court of Special Appeals are not before us.

Calhoun raises no question as to whether the severance may have constituted good cause for the postponement. Instead, he argues that § 591 and Rule 746 were violated because the administrative judge did not postpone or approve the postponement of the August 4th trial date prior to the expiration of the 180-day period on August 9th.

The State's principal argument is that, even if § 591 and Rule 746 were violated because the administrative judge failed to postpone or approve the postponement of the trial date prior to the expiration of 180 days, the sanction for such violation should not be dismissal as long as there was good cause for the postponement. Alternatively, the State takes the position that § 591 and Rule 746 are complied with if the trial judge postpones the case before the 180-day period expires and the administrative judge approves the postponement of a trial date after the 180-day deadline. In our view, the State's arguments are unsound.

(1)

In *State v. Hicks,* 285 Md. 310, 403 A.2d 356, on motion for reconsideration, 285 Md. 334, 403 A.2d 368 (1979), we held that the time period set forth in § 591 and Rule 746 for trying a circuit court criminal case was mandatory. We further held that if the case was not tried within that period, and if there was no postponement of the trial date beyond the period in accordance with § 591 and Rule 746, "the sanction for non-compliance is dismissal of the criminal charges" unless the defendant had sought or expressly consented to a trial date in violation of the statute and rule. 285 Md. at 334–335, 403 A.2d 368. Moreover, one of the issues in *Hicks* was whether the administrative judge had

**3.** *Calhoun v. State,* 295 Md. 53 (1982).

granted a motion extending the trial date beyond the pre-scribed time period, and we held that he had. *Id.* at 319, 403 A.2d 356. This discussion and holding would have been entirely unnecessary under the State's principal theory in the case at bar. The holdings in *Hicks,* therefore, refute the State's argument that the only requirement of § 591 and Rule 746, which must be complied with to avoid dismissal, is the "good cause" requirement.

*Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982), reaffirmed the holdings in *Hicks.* In *Goins* the defendant did not challenge in this Court the finding that the requisite cause existed for postponing the trial past 180 days. Instead, the principal issues were (1) whether the administrative judge was authorized to postpone the trial date on his own motion and (2) whether the administrative judge did in fact order the postponement of the trial date beyond 180 days. This Court held that the case should not be dismissed because, under § 591 and Rule 746 the administrative judge is autho-rized to act sua sponte and because he did issue an order effectively postponing the trial beyond the 180-day deadline. Therefore, as pointed out recently in *State v. Frazier,* 298 Md. 422, 449–450 n. 20, 470 A.2d 1269 (1984), *Goins* held that

"if a case is not tried within the 180-day deadline, and if there was no order by or approved by the administrative judge having the effect of postponing the trial past the deadline, a motion to dismiss for a violation of § 591 and Rule 746 must ordinarily be granted even if there may have been good cause for such a postponement. *See Goins,* 293 Md. at 106, 109–112 [442 A.2d 550]."

We went on to state in *Frazier* that, under § 591 and Rule 746, the exercise of judgment in determining the presence or absence of good cause for postponement is vested in the administrative judge or his designee. We held that neither another trial judge ruling on a motion to dismiss nor an appellate court are authorized to make a de novo determina-tion of good cause. It would be totally inconsistent with this holding to now take the position that a trial judge ruling on a motion to dismiss or an appellate court can make

a de novo determination of good cause for a postponement and, upon a finding of good cause, can excuse the State's noncompliance with § 591 and Rule 746.

*Hicks, Goins* and *Frazier* all require rejection of the State's first argument in this case.

(2)

There is similarly a lack of merit in the State's alternate contention that a postponement of the trial date by the trial judge prior to the expiration of the 180-day deadline, coupled with approval by the administrative judge after the deadline, constitutes compliance with § 591 and Rule 746. Even if the trial judge in the present case had purported to postpone the trial date on August 4, 1981, and assuming arguendo that the administrative judge did approve such postponement on August 24, 1981, the State's argument cannot be squared with the language of § 591 and Rule 746 and this Court's opinions.

Section 591 states that the assigned trial date within the 180-day period shall be postponed "only with the permission of the administrative judge." Under the language of Rule 746, only "the county administrative judge or a judge designated by him may grant a change of trial date." Therefore, under both the statute and rule, what is necessary to postpone a trial date is a decision by the county administrative judge. Whether the county administrative judge does this in the form of "approving" a postponement tentatively granted by the trial judge, or by initially ordering the postponement, is immaterial; the essential action to effect the postponement is the order of the administrative judge. As discussed in *State v. Frazier, supra,* 298 Md. at 450, 470 A.2d 1269, "§ 591 and Rule 746 transfer the authority to postpone a criminal trial from any trial judge to the administrative judge or his designee . . . ." In *Frazier (id.* at 450, 470 A.2d 1269), as well as in *Hicks v. State, supra,* 285 Md. at 317, 403 A.2d 356, we quoted with approval the statement in *Guarnera v. State,* 20 Md.App. 562, 573, 318 A.2d 243, *cert. denied,* 272 Md. 742 (1974), that by enacting § 591, "the

Legislature . . . has denied all judges but the administrative head of the court authority to exercise . . . [the postponement] power." *See also Hughes v. State,* 288 Md. 216, 229, 421 A.2d 69 (1980). This was acknowledged in the instant case by the trial judge on August 4, 1981, who stated that a "request for a postponement of the criminal case is addressed generally to the . . . administrative judge."

■ Consequently, in this case no order of the trial judge on August 4, 1981, could have, consistently with § 591 and Rule 746, postponed Calhoun's scheduled trial date beyond the 180-day deadline. Such a postponement, to be in accordance with the statute and rule, would have to be done by the administrative judge or his designee. Here the trial date was in effect postponed beyond the August 9th deadline without any action by the administrative judge or his designee. A purported ratification by the administrative judge, long after the trial has already been improperly postponed beyond the 180-day period, is not compliance with § 591 and Rule 746. To hold otherwise would render largely meaningless the requirements of § 591 and Rule 746 for postponing cases beyond the 180-day period.[4]

---

**4.** It is noteworthy that courts in other jurisdictions have reached the same conclusion. In discussing its 180-day speedy trial statute, the Kansas Supreme Court concluded that a continuance beyond the 180-day period must be granted before the period expires. In *State v. Cox,* 215 Kan. 803, 805, 528 P.2d 1226 (1974), the Court stated, "[w]e think it clear under the language of 22–3402 that in order for the continuance exception to be brought into play, the state must show that a continuance was granted . . . during the 180-day statutory period for one of the authorized reasons." *See also State v. Sanders,* 209 Kan. 231, 233, 495 P.2d 1023 (1972).

The Supreme Court of Ohio, when faced with facts similar to those in the instant case, reversed the defendant's conviction and discharged the defendant. *State v. Pudlock,* 44 Ohio St.2d 104, 338 N.E.2d 524 (1975). The Court explained (44 Ohio St.2d at 106, 338 N.E.2d 524):

"Here, the court failed to set a date for trial within the 90-day period established by R.C. 2945.71(B)(2). Instead, it allowed the 90 days to expire, and thereafter, *sua sponte,* ruled that the presence of a crowded docket warranted a continuance. It is evident that to allow a trial court to extend the required time period under the

(3)

Finally, we address the argument in Judge Rodowsky's dissenting opinion that *State v. Hicks* should be overruled.

In arguing that the sanction of dismissal is unnecessary to secure compliance with § 591 and Rule 746, Judge Rodowsky relies on selective statistics designed to show that reductions in the average time between the filing of a criminal case and the trial, and between the filing and ultimate disposition, were being achieved in Maryland even before the *Hicks* decision in June 1979. Preliminarily Judge Rodowsky overlooks the fact that, although this Court's decision in *Hicks* was rendered in 1979, we promulgated Rule 746 in 1977 intending to "put teeth" into the requirements governing the assignments of criminal cases for trial. *Hicks,* 285 Md. at 318, 403 A.2d 356. Many court officials and prosecutors may have realized, like the trial judge in *Hicks,* that upon the passage of Rule 746 the appropriate sanction for violation was dismissal. More importantly, Judge Rodowsky fails to take into account the sudden decrease in the average time between filing and disposition that occurred after *Hicks.* For example, while Baltimore City's average time from filing to disposition decreased from 189 days to 167 days just prior to this Court's *Hicks* opinion, it dropped even more significantly immediately following *Hicks.* In fiscal 1982, the average time between filing and disposition in Baltimore City was 139 days.[5] Particularly in light of the increasing

---

above circumstances would render meaningless the provisions of R.C. 2945.71, and thwart the intent of the General Assembly to provide specified time limits within which an accused must be brought to trial."

*See also Oakwood v. Ferrante,* 44 Ohio App.2d 318, 320, 338 N.E.2d 767 (1975). *See Durrance v. Rudd,* 398 So.2d 1012; 1015 (Fla.App. 1981) ("a court cannot retroactively hold its earlier continuance was for 'exceptional circumstances' after the speedy trial time has run to avoid the speedy trial limits").

**5.** Administrative Office of the Courts, Annual Report of the Maryland Judiciary, Statistical Abstract 78 (1981–1982). *See* the discussion in *State v. Frazier, supra,* 298 Md. at 458, 470 A.2d 1269.

load of criminal cases in our courts, there is nothing which would indicate that the sanction of dismissal has not been effective in causing criminal cases to be tried more promptly.

Moreover, for this Court to now overrule *Hicks* and abandon the sanction of dismissal would fly in the face of legislative policy. As discussed in detail in our *Frazier* opinion, 298 Md. at 458–459, 470 A.2d 1269, after *Hicks* the General Assembly in 1980 considered several proposals to modify § 591 and Rule 746, most of which would have provided that there be no sanction for a violation of the 180-day requirement or a sanction other than dismissal. Despite much support for changing the dismissal sanction, the General Assembly declined to do so. Instead, the only modification made in § 591 and Rule 746, as construed in *Hicks,* was to change the standard for a postponement by the administrative judge from "extraordinary cause" to "good cause."[6] The Legislature's action in 1980 reflects a conscious policy determination to retain the dismissal sanction. Furthermore, where, following this Court's interpretation of a statute, the legislature has re-enacted with amendments the statute without changing such interpretation, "it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute." *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301 (1981), and cases there cited.

The dissent's disapproval of *Hicks* also rests on the contention that to dismiss a case against an accused criminal punishes the citizens of the State. What this argument fails to take into account is that delay in prosecution, the very delay § 591 and Rule 746 aim to combat, harms society more than the dismissal of an occasional case for violation of the

---

6. In addition, in recent years there have been bills introduced in the General Assembly to adopt the "sanction" advocated by Judge Rodowsky, but none of these bills have passed.

statute and rule.[7] Without a sanction with teeth in it, long delays would likely return, resulting in many more cases terminating without convictions and without the guilty being punished. The longer the interval of time between filing and trial, the greater the chance that the State's witnesses will disappear, be unwilling to testify, or forget the incidents of the crime. Once the State's case is weakened by delay, the higher the probability that the State will reduce charges or allow a case to be abandoned. Thus, the negative impact on the citizens of this State would likely be greater without § 591's and Rule 746's mandatory dismissal sanction.

Lastly, Maryland's law in this area is consistent with the prevailing view in other jurisdictions having statutes or rules similar to § 591 and Rule 746. The overwhelming majority of those jurisdictions, either by legislative enactment or court interpretation, hold dismissal to be the appropriate sanction if a defendant has not been brought to trial within the required time period. *See, e.g., Westdahl v. State,* 592 P.2d 1214, 1216 and n. 6 (Alaska 1979); *Healey v. State,* 389 So.2d 278 (Fla.App.1980); *Jeffries v. State,* 140 Ga.App. 477, 231 S.E.2d 369, 371–372 (1976); *People v. Richards,* 81 Ill.2d 454, 43 Ill.Dec. 700, 703, 410 N.E.2d 833, 836 (1980); *State v. Peterson,* 288 N.W.2d 332, 335 (Iowa 1980); *State v. Kinstler,* 207 Neb. 386, 299 N.W.2d 182, 185–186 (1980); *People v. Conway,* 74 A.D.2d 582, 424 N.Y. S.2d 304 (1980); *State v. Bonarrigo,* 62 Ohio St.2d 7, 402 N.E.2d 530, 534 (1980).

For all of these reasons we reject the dissent's argument that we should today, by judicial decision, change the requirements of § 591 and Rule 746 as interpreted in *Hicks* and intended by the Legislature. If there is to be a policy change, it should be by the General Assembly as the principal policy-making body in this State.

---

**7.** Interestingly enough, the instant opinion is the first opinion in which this Court has decided that dismissal is required under § 591 and Rule 746.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS THAT IT REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH DIRECTIONS TO DISMISS. COSTS TO BE PAID BY BALTIMORE COUNTY.

RODOWSKY, Judge, dissenting.

I respectfully dissent. This is not because I perceive any misstep in the reasoning of the majority. The Court's opinion, beginning from the premise of *State v. Hicks*, 285 Md. 310, 403 A.2d 356, on motion for reconsideration, 285 Md. 334, 403 A.2d 368 (1979), marches with impeccable judicial logic and by *stare decisis* to the mandate of dismissal. The problem lies in *Hicks'* holding that, absent waiver or consent, the sanction for noncompliance with § 591 and Rule 746 ordinarily is dismissal of the criminal charges.

The policy underlying § 591 and Rule 746 is to obtain the prompt disposition of criminal cases. Assigning an early trial date, coupled with a strictly enforced policy against postponements, reduces backlogs and the advantages from sheer delay sought particularly by those with no meritorious defense. These are generally accepted caseload management techniques. *Hicks* superimposed a dismissal sanction apparently to prevent "almost wholesale violations of the statute and rule." 285 Md. at 334, 403 A.2d at 369. While § 591 and Rule 746 are mandatory, violation of a mandatory rule does not automatically carry dismissal as the sanction. *See In re Dewayne H.,* 290 Md. 401, 430 A.2d 76 (1981). Underlying the *Hicks* choice of dismissal must have been the belief that so stringent a sanction was necessary to achieve the policy goal. Events subsequent to *Hicks* cast doubt on the validity of that belief.

*Hicks* was written against a background in which Rule 746 had utilized 120 days since July 1, 1977. The opinion was filed on June 25, 1979 and the per curiam opinion denying the State's motion for reconsideration was filed July 19, 1979. By order of this Court adopted and effective Novem-

ber 16, 1979, based upon "finding that an emergency does in fact exist," Rule 746 was amended to 180 days. I shall test against the longer period.

In fiscal 1977 there had been only one jurisdiction (Dorchester) and in fiscal 1978 there had been only one jurisdiction (Harford) where the average time from filing to trial or hearing of a circuit court criminal case exceeded 180 days.[1] The statewide average time from filing to disposition of circuit court criminal cases for fiscal 1978 was 166 days.[2] However, during that year there were seven jurisdictions in which the average time from filing to disposition exceeded 180 days: Baltimore City (189), Prince George's (187), Calvert (185), Howard (187), Harford (202), Queen Anne's (391) and Wicomico (233).[3] For the year ending June 30, 1979, during which the June 25, 1979 *Hicks* opinion could have had no effect on what was happening, the statistics are significantly better. *Statewide* average time from filing to trial or hearing, a computation not previously made, was reported to be 126 days during fiscal 1979, and no jurisdiction's average exceeded 180 days. The statewide average time from filing to disposition dropped from 166 to 159 days. There was a reduction from seven to three in the number of jurisdictions where the average time from filing to disposition exceeded 180 days. These three were Howard (224), Harford (220) and Prince George's (187). Baltimore City's average time from filing to disposition dropped from 189 days to 167.[4] These reductions were effected when dismissal was not the

---

1. Administrative Office of the Courts, *Annual Report of the Maryland Judiciary, 1977–1978, Statistical Abstract,* Table E–7. Hereinafter these annual statistical abstracts will be referred to as the "AOC Report."

2. AOC Report 1978–79, Table E–9.

3. AOC Report 1978–79, Table E–9.

4. AOC Report 1978–79, Table E–8. Baltimore City figures reflect only felony cases and are the only Baltimore City figures utilized in computing the statewide average.

sanction. They presumably were produced by techniques of judicial administration.

The most recent AOC Report does not furnish any average times from filing to trial or hearing. However, the statewide average time from filing to disposition was 159 days for fiscal 1983. This is the same statewide average achieved without benefit of *Hicks* in fiscal 1979.[5] I do not believe it can be demonstrated that a dismissal sanction is necessary in order to achieve the policy of § 591 and Rule 746 or that administering the criminal caseload without that sanction would produce "almost wholesale violations" in reference to a 180 day standard.

Dismissal as the sanction should also be considered in light of the way in which the violation in the present case arose. On the morning of August 4, 1981 this case and an unrelated criminal case were assigned for trial before the same circuit judge. An experienced assistant state's attorney appeared for the prosecution in both cases. He elected to go to trial with the unrelated matter. That case was *State v. Nathan Ray Thomas,* Baltimore County Criminal Case No. 72375, in which the State had served notice that it was seeking the death penalty and in which the jury on August 17 imposed a death sentence. From the standpoint of counsel in litigation, the stress of prosecuting a death penalty case is exceeded only by the stress of defending such a case. Under these circumstances the assistant state's attorney understandably omitted appearing before the administrative judge, or arranging for a colleague to appear before the administrative judge, in order to obtain approval of a postponement of the instant case beyond the 180th day. Had that approval been

---

5. AOC Report 1982–83, Table CC–33. Interestingly, Table CC–33 reflects that in fiscal 1983, when dismissal had been the announced sanction for three to four years, the average time from filing to disposition exceeded 180 days in six counties, Cecil, Queen Anne's, Harford, Garrett, Washington and Carroll. However, if cases which had been on the docket over 360 days were excluded, no jurisdiction exceeded an average of 180 days to disposition.

sought, its grant was so clearly compelled as to be nearly perfunctory.

The present case forcefully illustrates that the burden of bringing criminal cases to trial is borne by human beings. No matter how highly motivated and conscientious a prosecutor might be, a critical date can slip by without required action having been taken. When human error strikes, it can strike, as here, in the case of a convicted murderer-robber-kidnapper. By dismissing, we do not eliminate future human error from the system. By dismissing, a court does not sanction the individual responsible for the violation. The moving party in a criminal case is the State as representative of the people of Maryland. They are wholly innocent of any § 591 and Rule 746 violation, but they are the persons punished when violation results in dismissal. In the name of swift prosecution the *Hicks* sanction incongruously aborts any prosecution. It confers the ultimate benefit on the accused without any regard to the merits of the case. In sum, the sanction is unnecessary, misdirected and disproportionate.

For these reasons I believe that so much of *Hicks* as adopts the dismissal sanction should be overruled.

A perfectly sound approach to this problem was recommended to this Court by the Standing Committee on Rules of Practice and Procedure in its Eighty-Second Report. It proposed a new rule, 1–201(a), which would read in part (10:10 Md.R. S–7 (May 13, 1983)):

When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule, *except that a court may dismiss a charging document for noncompliance with a rule mandating or prohibiting conduct only if it determines that the State's failure to comply with the rule has*

*resulted in the violation of a constitutional right of the defendant.* [Emphasis added.]

However, at an open conference held on June 23, 1983 following public notice, a majority of the Court voted to delete the above-italicized language from the proposed rule.